**STATE AUDITOR, Appellant,**

v.

**JOINT COMMITTEE ON LEGISLATIVE RESEARCH, et al., Respondents.**

No. 79454.

Supreme Court of Missouri,
En Banc.

Sept. 30, 1997.

As Modified on Denial of Rehearing
Nov. 25, 1997.

Marc H. Ellinger, Keith A. Thornburg, Jefferson City, for Appellant.

John E. Bardgett, James B. Deutsch, R. Thomas Avery, Jefferson City, for Respondents.

ROBERTSON, Judge.

In this case, we consider whether article II, section 1 of the Missouri Constitution, which divides Missouri government into "three distinct departments," permits the legislative department to conduct a management audit of an executive department agency pursuant to sections 23.150, 23.160 and 23.170, RSMo 1994.

The trial court sustained the legislature's claim of authority. This appeal followed. Our jurisdiction rests on article V, section 3 of the constitution. We reverse.

## I.

May 11, 1995, the Joint Committee on Legislative Research (the "Joint Committee") adopted a resolution directing the Oversight Division of the Joint Committee to conduct a management audit of the State Auditor's office pursuant to authority granted the Joint Committee under sections 23.150 and 23. 170. While performing the audit, the Oversight Division sought access to documents which the Auditor claimed were privileged "working papers." Working papers are those papers created by the employees of the State Auditor's Office in the course of conducting an audit of another agency.

July 25, 1995, Margaret Kelly, the State Auditor, filed a petition requesting a declaratory judgment and an injunction in the Cole County Circuit Court. On September 21, 1995, Kelly amended her petition to include six counts. The first count claimed the statutes authorizing the Joint Committee to conduct management audits, sections 23.150, 23.160 and 23.170, RSMo, violate the constitutional requirement that the departments of government remain separate. Mo. CONST. ART. II, SEC. 1. The remaining five counts raise a number of statutory issues which, for reasons that will be apparent shortly, are not relevant to our decision here.

November 3, 1995, Kelly filed a motion for summary judgment on counts one and two of the petition. On December 8, 1995 the Joint Committee filed a motion for summary judgment on the same counts. On January 9, 1996, the trial court overruled Kelly's mo-

tion and sustained the Joint Committee's summary judgment motion. Subsequent procedural skirmishes produced additional summary judgment motions filed on the remaining counts, all of which the trial court sustained in the Joint Committee's favor on November 8, 1996.

Kelly appealed to this Court.

## II.

### A.

Section 23.150.1 provides: "The committee on legislative research shall organize an oversight division to prepare fiscal notes and to conduct management audits and program audits of state agencies." Section 23.170.1 provides:

The oversight division of the committee on legislative research shall, pursuant to a duly adopted concurrent resolution of the general assembly, or pursuant to a resolution adopted by the committee on legislative research, conduct management audits and program audits of agencies as directed by any such resolution.

Article II, section 1 of the Missouri Constitution provides:

The powers of government shall be divided into three distinct departments—the legislative, executive and judicial—each of which shall be confided to a separate magistracy, and no person, or collection of persons, charged with the exercise of powers properly belonging to one of those departments, shall exercise any power properly belonging to either of the others, except in the instances in this constitution expressly directed or permitted.

### 1.

■■■ "The legislative power shall be vested in a senate and house of representatives to be styled 'The General Assembly of the State of Missouri.'" Mo. CONST. ART. III, SEC. 1. A careful reading of article shows that the constitution assigns the General Assembly the single power and sole responsibility to make, amend and repeal laws for Missouri and to have the necessary power to accomplish its law-making responsibility. "[A]ll the power to make laws in the name and with

the authority of its constituent elements—its citizens en masse—is lodged in the temporary Legislature, subject only to the restraining clauses of the Constitutions of the state and nation." *Ludlow–Saylor Wire Co. v. Wollbrinck,* 275 Mo. 339, 205 S.W. 196, 197 (1918). The power of the legislature to make laws is plenary within its sphere of responsibility.

### 2.

■ "The supreme executive power shall be vested in a governor." Mo. CONST. ART. IV, SEC. 1. "The executive department shall consist of all state elective and appointive officials and employees except officials and employees of the legislative and judicial departments . . . ." Mo. CONST. ART. IV, SEC. 12. "Under our system of government, it is universally agreed that it is the function of the executive department, honestly and efficiently, to administer and enforce the laws as written. . . ." 16 C.J.S. CONSTITUTIONAL LAW, SEC. 214. Thus, the power to administer and enforce the law lies solely with the executive branch.

### B.

■ The constitutional demand that the powers of the departments of government remain separate rests on history's bitter assurance that persons or groups of persons are not to be trusted with unbridled power. For this reason, the separation of the powers of government into three distinct departments is, as oft stated, "vital to our form of government." *State on Information of Danforth v. Banks,* 454 S.W.2d 498, 500 (Mo. banc), *cert. denied,* 400 U.S. 991, 91 S.Ct. 452, 27 L.Ed.2d 439 (1971), because it prevents the abuses of power that would surely flow if power accumulated in one department. *See State Tax Commission v. Administrative Hearing Commission,* 641 S.W.2d 69, 73–74 (Mo. banc 1982) (separation of powers "prevent[s] the abuses that can flow from centralization of power"). Thus, "[t]he doctrine of the separation of powers [is not meant to] promote efficiency but to preclude the exercise of arbitrary power." *Myers v. United States,* 272 U.S. 52, 293, 47 S.Ct. 21, 85, 71 L.Ed. 160 (1926) (Brandeis, J., dissenting).

■ In practice, the functional lines between the two political departments are not hard, impenetrable ones. There is a necessary overlap between the *functions* of the departments of government. This is nowhere more evident than in the administrative law area, where the legislature delegates rule-making authority to executive expertise. But the constitution does not permit one department to exercise the *powers* reserved for the other. Thus, it is apparent that the constitution intends for the legislature's power to cease when a bill becomes law and the executive branch begins to exercise its power to administer and enforce that law. "Once the legislature 'makes its choice in enacting legislation, its participation ends.'" *Missouri Coalition for the Environment v. Joint Committee on Administrative Rules,* 948 S.W.2d 125, 134 (Mo. banc 1997), *quoting Bowsher v. Synar,* 478 U.S. 714, 733–734, 106 S.Ct. 3181, 3191–92, 92 L.Ed.2d 583 (1986).

### C.

■ There are two broad categories of acts that violate the constitutional mandate of separation of powers. "One branch may interfere impermissibly with the other's performance of its constitutionally assigned [power] . . . [citations omitted]. Alternatively, the doctrine [of separation of powers] may be violated when one branch assumes a [power] . . . that more properly is entrusted to another. [citations omitted]." *I.N.S. v. Chadha,* 462 U.S. 919, 963, 103 S.Ct. 2764, 2790–91, 77 L.Ed.2d 317 (1983). (Powell, J., concurring).

■ Although "we presume that [a] statute is valid unless it clearly contradicts a constitutional provision." *Asbury v. Lombardi,* 846 S.W.2d 196, 199 (Mo. banc 1993), sections 23.150, 23.160 and 23.170 violate article II, section 2 in each of the ways Justice Powell describes in *Chadha.* First, the statutes permit the legislature to interfere impermissibly with a co-equal department's performance of its constitutional power. Second, the statutes empower the legislative department to perform a duty reserved expressly to the executive department's authority by article IV, section 13.

### 1.

In this case, the Joint Committee directed the Oversight Division to conduct a management audit of the State Auditor's office. Section 23.160.1, RSMo 1994, provides:

As used in this chapter, the term *"management audit"* means a post-audit which determines, with regard to the purpose, functions, and duties of an audited agency:

(1) Whether the agency is managing and utilizing its resources in an economical and efficient manner; and

(2) Which identifies causes of inefficiencies or uneconomical practices including inadequacies in the use and management of information systems, internal and administrative procedures, organizational structure, use of resources, allocation of personnel, and purchasing policies.

The Joint Committee relies heavily of *Director of Revenue v. State Auditor,* 511 S.W.2d 779 (Mo.1974), and claims that that case interprets the constitution to prohibit the state auditor from conducting management audits as part of her authority to post-audit the accounts of state agencies.

*State Auditor* addresses the limited question "whether the Auditor, in performance of his constitutional duty to postaudit the Department of Revenue, is entitled to access to individuals' tax returns in custody of the Department of Revenue and which are protected by law from disclosure by the Department." *Id.* at 780. The Court determined that the "identity of the [individual tax] return by name and enterprise is not representative of any financial information" the auditor requires to conduct a post audit. *Id.* at 783. Accordingly, the Court denied the auditor access to taxpayers' returns.

The Joint Committee reads *State Auditor* to require this Court to adopt a technical definition of the words "post-audit" to determine the meaning of that phrase within article IV, section 13. Although it is true that *State Auditor* relies on professional accounting definitions to determine the meaning of "post-audit," we reject the Joint Committee's suggestion that *State Auditor* requires that we adopt professionally-accepted definitions to determine the meaning of constitutional words.

As to the 1945 constitution, this Court has consistently given words used in that organic document their plain, ordinary meaning in preference over professionally-accepted, technical definitions. An example of this Court's decisions from each decade since 1945 should make the point sufficiently. *Household Finance Corp. v. Shaffner,* 356 Mo. 808, 203 S.W.2d 734 (1947); *Vanlandingham v. Reorganized School Dist. No. R–IV,* 243 S.W.2d 107 (Mo.1951); *State ex rel. Keystone Laundry & Dry Cleaners, Inc. v. McDonnell,* 426 S.W.2d 11 (Mo.1968); *State ex inf. Danforth v. Cason,* 507 S.W.2d 405 (Mo. banc 1973); *Buechner v. Bond,* 650 S.W.2d 611 (Mo. banc 1983); *Spradlin v. City of Fulton,* 924 S.W.2d 259 (Mo. banc 1996). *See also Akin v. Missouri Gaming Commission,* 956 S.W.2d 261, 263 (Mo. banc 1997) (use of the plain, ordinary meaning of a word used in the constitution "reflects the common sense of the people").

The plain and ordinary meaning is found in the dictionary. *Boone County Court v. State,* 631 S.W.2d 321 (Mo. banc 1982); *Zahner v. City of Perryville,* 813 S.W.2d 855, 858 (Mo. banc 1991); *Akin,* at 263. Thus, for purposes of article IV, section 13, an audit is a "methodical examination and review of a situation or condition (as within a business enterprise) concluding with a detailed report of findings." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 143 (1976) A post-audit is an "audit made subsequent to the final settlement of a transaction." *Id.* at 1771. These common definitions make clear that a post-audit has at its core financial transactions. For this reason, *State Auditor* correctly states the law, even without reference to the professionally-accepted, technical definitions to which it makes unfortunate reference.

And for this reason *State Auditor* is instructive in this case. In dicta, the Court wrote that the auditor's desire to do more than review financial transactions could not be countenanced because "[i]t is not the business of the Auditor ... to operate the

department [of revenue]." 511 S.W.2d at 783. Implicit in the Court's language is the notion that a post-audit that goes beyond obtaining financial information and extends to offering opinions about the manner in which an agency conducts its business is tantamount to an attempt to operate the agency suffering the post-audit. The "management audit" that section 23.160.1 describes authorizes the Joint Committee to go beyond obtaining financial information to offering opinions about the manner in which an agency conducts its business. Just as it is not the business of the auditor to manage other executive agencies, it is not the business of the legislative branch to operate executive agencies.

We tread carefully here because we agree with the legislature's core argument that it may constitutionally obtain information to assist it in making determinations as to appropriate laws and expenditures for the state. But the power to post-audit against a standard no more carefully circumscribed than "economical and efficiency" permits the legislature to interfere with the administrative decisions of co-equal branches of government. This is the sort of impermissible interference a co-equal branch's performance of its constitutional duties against which the separation of powers doctrine is designed to guard and precisely the complicated and indirect legislative "encroachment" against which Madison warned. "In republican government, the legislative authority necessarily predominates." THE FEDERALIST No. 51, at 240 (J. Madison) (Hallowell ed. 1852).

> The legislative department derives a superiority in our governments from other circumstances. Its constitutional powers being at once more extensive, and less susceptible of precise limits, it can with greater facility, mask, under complicated and indirect measures, the encroachments which it makes on the coordinate departments.

THE FEDERALIST No. 48, at 230 (J. Madison) (Hallowell ed. 1852). It is an encroachment because "the legislative department alone has access to the pockets of the people, and ... has a prevailing influence over the pecuniary rewards of those who fill other departments;

a dependence is thus created in the latter, which gives still greater facility to encroachments in the former." Id.

The information-gathering power the legislature claims through the Joint Committee attaches to the lawmaking process, not after-the-fact assessment of the administration of the law on which the post-audit focuses. Admittedly, the line between a post-audit and a legislative demand that an executive agency produce documents and information about its management and spending practices before a committee of the legislature considering a pending bill is a fine one. The line that the constitution draws in giving the legislature power to make and the executive the power to administer the law nevertheless demands that the legislature gather its information in a hearing designed to consider pending legislation, not in a post-audit designed to manage, control and supervise executive decisions indirectly.

The authority granted the Joint Committee in sections 23.150–23.170 extends beyond the information-gathering function necessary to the legislature's consideration of proposed legislation. Indeed the name chosen for the auditing entity—"the oversight division"—speaks volumes about the true purpose of the Joint Committee's purpose in ordering the audit. "Oversight" means "watchful care: general supervision: management." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1610 (1976).

▮▮ Lest there be any confusion on this point, we repeat what we said in *Missouri Coalition*, 948 S.W.2d 125. The legislature "may ... attempt to control the executive branch by passing amendatory or supplemental legislation and presenting such legislation to the governor for signature or veto, or, by the power of appropriation." Id. at 134. But under our constitution, the legislature may not control, supervise or manage the execution of a law except by the language contained in the law itself.

We hold that legislature has no authority to post-audit the management performance of a co-equal department of government.

### 2.

Sections 23.150–23.170 violate the constitution for a second reason: The statutes claim for the legislature a power constitutionally entrusted to the executive branch.

The constitution provides that within the executive department, "there shall be a state auditor." Mo. CONST. ART. IV, SEC. 12. The State Auditor

> *shall* establish appropriate systems of accounting for all public officials of the state, *post-audit the accounts of all state agencies* and audit the treasury at least once annually. *[She] shall make all other audits* and investigations required by law, and shall make an audit report to the governor and general assembly.... No duty shall be imposed on [her] by law which is not related to the supervising and auditing of the receipt and expenditure of public funds.

Mo. CONST. ART. IV, SEC. 13 (Emphasis added).

The duty imposed on the State Auditor extends to the post-auditing the accounts of all state agencies and all other audits required by law. This audit power is executive power under the constitution because it involves supervision of the financial decisions of all state agencies and the compliance of those agencies with state law. Because it is executive power, the auditor's post-audit power may not be exercised by the legislature or the judiciary. That the constitution requires the State Auditor to provide copies of her audits to the General Assembly assures the legislature of the information any post-audits produce.

The Joint Committee offers two arguments in support of its position. First, the Joint Committee claims that the word "accounts" is a word of limitation, extending the state auditor's executive power only to post-audits of accounts and, by implication, permitting the Joint Committee to perform other forms of post-audits. We disagree. As the common, plain and ordinary definition shows, a post-audit necessarily includes an examination of transactions. A review of transactions necessarily involves a review of an agency's accounts. We do not presume, as the Joint Committee's argument must, that words used in the constitution are redundant. Therefore, "accounts" must be read as part of the phrase "accounts of all state agencies." The purpose of the constitutional language is thus clear. Article IV, section 13, extends the power of the auditor's post-audit power to the accounts of all state agencies; it does not limit the type of post-audit the auditor may conduct.

Second, the Joint Committee claims that if this reading of the constitution is correct, the State Auditor cannot be audited except by the State Auditor and that is no audit at all. We disagree. Section 21.760, RSMo 1994, makes provision for an audit of the State Auditor's office. The constitutionality of that statute is not at issue here. Moreover, the authority the Joint Committee claims is not limited to a post-audit of the State Auditor's office. Sections 23.150–23.170 extend the Joint Committee's audit authority over every department and aspect of state government. The principle on which this case turns necessarily extends to protect the State Auditor from a legislative audit precisely because the State Auditor is part of the executive department, not because the constitution does not make explicit provision for an independent audit of the State Auditor's office.

### III.

The judgment of the circuit court is reversed.

All concur.