Roy BERGMAN, Timothy Heuiser, and Jay Nixon, Attorney General of the State of Missouri, Appellants,

v.

Fred M. MILLS, et al., and Rebecca McDowell Cook, Secretary of State of the State of Missouri, and Claire C. McCaskill, State Auditor of the State of Missouri, Respondents.

No. WD 56874, WD 56892 and WD 56893.

Missouri Court of Appeals, Western District.

March 5, 1999.

Charles A. Weiss, St. Louis, for Bergman and Heuiser.

Jeremiah W. (Jay) Nixon, Atty. Gen., James A. McAdams, Asst. Atty. Gen., Jefferson City, for appellants.

George A. Bartlett, Jefferson City, for Mills, Sr., et al.

Before JAMES M. SMART, Jr., Presiding Judge, JOSEPH M. ELLIS, Judge, and VICTOR C. HOWARD, Judge.

PER CURIAM.

This is a consolidated appeal from three separate lawsuits, all relating to the official ballot summary for a referendum on carrying

concealed weapons, which is to be voted on by the citizenry on April 6, 1999.[1] The issue on this appeal is the legal effect of Section B of House Bill 1891, which purports to dictate the ballot title for the referendum in question.

## FACTS

On May 15, 1998, the General Assembly adopted House Bill 1891, a bill directing that a referendum be submitted to the people concerning whether citizens who apply and meet certain requirements should be permitted to carry concealed firearms. The bill provided that the referendum would be put to a vote of the people on April 6, 1999. Section B of House Bill 1891 contained what was described as the official ballot title, which is set out in the Appendix to this opinion, to be used in submitting the measure to the voters. Subsequently, Fred M. Mills, Sister Mary Jean Ryan, FSM, and Chuck L. Keithley, as citizens and voters, brought an action in the circuit court of Cole County, Missouri, to challenge the official ballot title mandated by the legislature in House Bill 1891. The Mills petition alleged that the Secretary of State, State Auditor and Attorney General improperly failed to discharge their ballot title drafting duties as set forth in §§ 116.160, 116.170, and 116.175,[2] and that the official ballot title contained in Section B of House Bill 1891 was without legal effect. On January 12, 1999, the trial court entered a preliminary order in mandamus directing the Secretary of State, State Auditor and State Attorney General to perform their statutory ballot title drafting duties pursuant to Chapter 116, or to show cause why such order should not be entered. On January 21, 1999, Roy Bergman and Timothy Heuiser, also as citizens and voters, filed an Application to Intervene in the Mills action. The Application was orally denied by the court at a hearing held that same day. Also at that hearing, the court rejected the defendants' assertions that the plaintiffs' claims were barred by the doctrine of laches, and found that plaintiffs had standing to proceed in the matter and that mandamus was an appropriate remedy. The court specifically found that the Secretary of State has the responsibility pursuant to § 116.160 to draft the ballot titles for referenda.

On January 25, 1999, the trial court entered its written order in the case finding that the ballot language contained in Section B of House Bill 1891 was without legal effect, and directing the state defendants to perform their official ballot title preparation activities as set forth in Chapter 116. In compliance with the court's order, the state officials completed their title drafting functions as directed by the court and certified the official ballot to the local election authorities. The official ballot title certified by the Secretary of State is also set out in the Appendix to this opinion. From this judgment, the Attorney General appeals, as do the rejected Intervenors, Bergman and Heuiser. For the sake of clarity, this case will hereafter be referred to as "Mills I."

On February 3, 1999, Bergman and Heuiser filed a five count petition in the circuit court of Cole County (hereinafter referred to as "Bergman"). Count I of the petition was a constitutional challenge to Sections 116.160, 116.170 and 116.175; Count II represents a constitutional challenge to the same sections as applied to House Bill 1891; Counts III and IV generally sought a Writ of Mandamus directing the Secretary of State to notify election authorities that the ballot title for House Bill 1891 previously certified had been stricken and not to publish or distribute same, and ordering the Secretary of State to notify election authorities that the official ballot title for House Bill 1891 was as formulated and prescribed in Section B of House Bill 1891; and, finally, Count V challenged the official ballot title of House Bill 1891 as

---

1. The resolution of the appeals in this court has been on an expedited timetable. The appeals were filed in this court on February 22, 1999 and motions for transfer to the Missouri Supreme Court, prior to opinion, were filed immediately thereafter. On February 24, 1999, the Supreme Court denied transfer. The parties filed briefs pursuant to an expedited briefing schedule directed by this court, and oral argument was heard on March 2, 1999.

2. All statutory references are to RSMo Supp. 1997 unless otherwise noted.

drafted and certified by the Secretary of State pursuant to § 116.190.

On February 4, 1999, Fred M. Mills, filed a second action in the Cole County circuit court (hereinafter *"Mills II"*), which was limited to a statutory challenge pursuant to § 116.190 to the official ballot title for House Bill 1891 as certified by the Secretary of State. On February 11, 1999, the trial court conducted an expedited hearing in *Bergman* and *Mills II*. At that hearing, the court granted the applications of the Attorney General and Fred M. Mills to intervene in the Bergman case, as well as the State Auditor's motion to consolidate *Bergman* and *Mills II*. Finally, after the hearing, the court entered its judgment incorporating the record, pleadings and judgment in *Mills I* into the consolidated case; finding that the ballot title as prepared by the Secretary of State was neither intentionally argumentative nor likely to create prejudice either for or against the proposed measure and that the language was sufficient and fair and in compliance with § 116.160.2; that the fiscal note summary as prepared by the State Auditor was approved and met the requirements of § 116.175; and ruling against plaintiffs Bergman and Heuiser on their claims and against plaintiff Mills on the claims contained in *Mills II*.

■■■ From these judgments, the Attorney General has appealed the trial court's ruling in *Mills I*, as have Bergman and Heuiser, based on the denial of their application to intervene. Bergman and Heuiser also appeal from the judgment in the consolidated case of *Bergman* and *Mills II*. All appeals have been consolidated in this court. On this appeal, Bergman and Heuiser have abandoned their constitutional challenges to Section 116.160, 116.170, and 116.175, as written and as applied in this instance. Thus, we need neither determine whether we have jurisdiction of these challenges or address their merits.[3]

## STANDARD OF REVIEW

■■■ Mandamus lies only when there is an unequivocal showing that a public official failed to perform a ministerial duty imposed by law. *Jones v. Carnahan*, 965 S.W.2d 209, 213 (Mo.App. W.D.1998). To be entitled to relief, there must be a showing that the applicant has a clear, unequivocal, specific and positive right to have performed the act demanded. *Id.* The court determines whether the right to mandamus is clearly established and presently existing by examining the statute under which the right is claimed. *Id.* "The principle at the heart of [the writ of mandamus] is that public officers are required to perform ministerial duties without any request or demand, and the entire public has the right to that performance." *Missouri Coalition for the Env't. v. Joint Comm. on Admin. Rules*, 948 S.W.2d 125, 131 (Mo. banc 1997) (*quoting State ex rel. Twenty–Second Judicial Circuit v. Jones*, 823 S.W.2d 471, 475 (Mo. banc 1992)).

■■■ Appellate courts review the grant of a writ of mandamus under an abuse of discretion standard. *Missouri Bluffs Golf Joint Venture v. St. Charles County Bd. of Equalization*, 943 S.W.2d 752, 754–55 (Mo. App. E.D.1997). Under an abuse of discretion standard, we will reverse the trial court's ruling only when it is " 'so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consider-

---

**3.** Appellant Attorney General requests that this court determine that the trial court should have dismissed the case brought by Respondent Mills, et al., on the ground of the equitable doctrine of laches. Laches may be invoked to deny relief when there has been an unreasonable delay in the assertion of a party's rights, and, as a result of such delay, another party has suffered legal prejudice. *Scheble v. Missouri Clean Water Comm'n*, 734 S.W.2d 541, 560 (Mo.App. E.D. 1987). The argument is not fully developed by the Attorney General (for instance, the concept of legal prejudice is not addressed), and the entire contention is completely ignored by the respondents and by Appellants Bergman and Heuiser.

In any event, we could review the trial court decision on laches only under an abuse of discretion standard. *Mississippi–Fox Drainage Dist. # 2 of Clark County v. Plenge*, 735 S.W.2d 748, 754 (Mo.App. E.D.1987). We will find an abuse of discretion when we conclude that the trial court ruling was so "arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *State ex rel. Webster v. Lehndorff Geneva, Inc.*, 744 S.W.2d 801, 804 (Mo. banc 1988). Based on the record and the arguments before us, we cannot say that the trial court abused its discretion in declining to dismiss the action on the ground of laches.

ation.'" *Whitman's Candies, Inc. v. Pet Inc.*, 974 S.W.2d 519, 527 (Mo.App. W.D. 1998) (*quoting State ex rel. Webster v. Lehndorff Geneva, Inc.*, 744 S.W.2d 801, 804 (Mo. banc 1988)). If reasonable people could differ about the propriety of the trial court's ruling, there is no abuse of discretion. *Whitman's*, 974 S.W.2d at 527–28.

## DELEGATION OF AUTHORITY

■■■ Article III, § 52(a), of the Missouri Constitution of 1945 provides, in pertinent part, that "a referendum may be ordered ¼ by the General Assembly, as other bills are enacted ¼." Referendum, therefore, is a constitutionally authorized method for the General Assembly to delegate its legislative authority. *Akin v. Dir. of Revenue*, 934 S.W.2d 295, 299 (Mo. banc 1996). A referendum is not subject to the veto power of the Governor. *Id.* Rather, "Article 3, § 52(a), authorizes reference of a bill to a veto or approval by the people and requires that once a bill is referred, it must be submitted to voters at a general election or special election provided for in the bill." *Id.*

It is conceded by all parties that House Bill 1891 was properly adopted and is to be submitted to the voters on April 6, 1999. And, it is important to understand that the dispute involved in this case is not about Section A of House Bill 1891, the referendum measure itself, but rather about Section B only, which contains the proposed ballot title. The dispositive issue is whether the General Assembly could prescribe the official ballot title to be used for such election, as it purported to do in Section B of House Bill 1891. The answer to this question requires analysis of constitutional and statutory provisions relating to the manner in which referendums are submitted to the voters.

■■■ The Missouri constitution, unlike the federal constitution, does not grant legislative power to the General Assembly, but rather is a limitation thereon. *Americans United v. Rogers*, 538 S.W.2d 711, 716 (Mo. banc 1976). Thus, except for restrictions imposed by the Missouri constitution and statutes enacted by the General Assembly, the power of the state legislature is unlimited and practically absolute. *Id.* This premise

flows from the "basic principle that the General Assembly, unless restrained by the constitution, is vested in its representative capacity with all the primary power of the people." *Three Rivers Junior College Dist. of Poplar Bluff v. Statler*, 421 S.W.2d 235, 238 (Mo. banc 1967). However, the scope of the legislature's methods of acting are not as comprehensive as the scope of its objects. Consequently, the General Assembly has "all the powers and privileges which are necessary to enable it to exercise in all respects, in a free, intelligent, and impartial manner, its appropriate functions, except so far as it may be restrained by the express provisions of the Constitution, or by some express law made unto itself, regulating and limiting the same." *Bohrer v. Toberman*, 360 Mo. 244, 227 S.W.2d 719, 723 (1950) (*quoting* LUTHER STEARNS CUSHING, LEX PARLIAMENTARIA AMERICANA: ELEMENTS OF THE LAW AND PRACTICE OF LEGISLATIVE ASSEMBLIES IN THE UNITED STATES OF AMERICA 221 (1874) (emphasis added)).

While the legislature, as the representative body, and possessed of the power of the people, is entitled to enact legislation prescribing the ballot title for a referendum measure, the question is whether the ballot title in this case constitutes a valid and legally effective exercise of legislative power. While respondents argue that there are constitutional constraints on the legislature's power to draft such ballot language, for purposes of this discussion, we will assume, *arguendo*, that there is no constitutional prohibition on such legislative action. Rather, the decisive question is whether, by enactment of §§ 116.160, 116.170, 116.175, and 116.180, the legislature has limited its own ability to prescribe ballot language without first amending or repealing those statutes in a manner permitted by the Constitution.

■■■ The legislature has the power to delegate its authority, even that which involves an exercise of discretion. *See, e.g., Menorah Medical Ctr. v. Health and Ed. Facilities. Auth.*, 584 S.W.2d 73 (Mo. banc 1979) and *ABC Security Service, Inc. v. Miller*, 514 S.W.2d 521 (Mo.1974). Significant to the

case *sub judice,* the legislature adopted § 116.160 [4] which provides:

1. **After the general assembly adopts** a joint resolution proposing a constitutional amendment or a **bill which is to be referred to a vote of the people** and it has been delivered to the secretary of state, the secretary of state shall promptly forward the resolution or bill to the state auditor. Within twenty days after receipt of the resolution or bill, **the secretary of state shall prepare and transmit to the attorney general a summary statement of the measure**....The summary statement may be distinct from the legislative title of the proposed constitutional amendment or bill. The attorney general shall within ten days approve the legal content and form of the proposed statement.

2. The official summary statement shall contain no more than fifty words. The title shall be a true and impartial statement of the purposes of the proposed measure in language neither intentionally argumentative nor likely to create prejudice either for or against the proposed measure. (Emphasis added).

In *Mills I,* the trial court found that the Secretary of State, the State Auditor, and the Attorney General had not performed the duties required of them by Chapter 116. The court further found that the provisions of Chapter 116 provide for the Secretary of State and the State Auditor to formulate and certify official ballot titles for initiatives and referendums, with the Attorney General to approve the legal content and form of the summaries. The trial court further found that the legislature could revise Chapter 116 to permit it to formulate an official ballot title but that it had not chosen to do so, implicitly

finding that Section B of House Bill 1891 did not amend or repeal any provision of Chapter 116. Accordingly, the trial court entered its order of mandamus directing the Secretary of State, State Auditor, and Attorney General to perform their statutorily mandated duties under Chapter 116.

Bergman, Heuiser and the Attorney General all argue that the trial court erred in finding that the General Assembly could not formulate an official ballot title as it purported to do in Section B of House Bill 1891. They contend that since the General Assembly's power is plenary, that notwithstanding the fact that it has delegated the authority to prepare official ballot summaries in *all* cases of referendums to the Secretary of State, it has somehow retained an inherent authority to draft official ballot summaries itself whenever it chooses to do so. We disagree.

Our Supreme Court has consistently held that the doctrine of separation of powers, as set forth in Missouri's constitution prevents abuses which can flow from centralization of power and is, therefore, vital to our form of government. *Missouri Coalition for the Env't.,* 948 S.W.2d at 132. Thus, it is said that "once the legislature 'makes its choice in enacting legislation, its participation ends.' " *Id.* at 134 (*quoting Bowsher v. Synar,* 478 U.S. 714, 733–34, 106 S.Ct. 3181, 3191–92, 92 L.Ed.2d 583 (1986)). "[U]nder our constitution, the legislature may not control, supervise or manage the execution of a law except by the language contained in the law itself." *State Auditor v. Joint Comm. on Legislative Research,* 956 S.W.2d 228, 233 (Mo. banc 1997).

The legislature is strictly confined by Article 2, Section 1 of the Missouri Constitution to enacting laws and it is not per-

---

4. Section 116.160 is part of a detailed and extensive statutory procedure enacted by the legislature providing for preparation and certification of official summary statements for ballot issues relating to referendums. Section 116.170 requires the State Auditor to prepare and file with the Secretary of State a fiscal note and a fiscal note summary for the proposed measure once received by the Auditor's office within 30 days. Section 116.175 directs the Auditor to assess the fiscal impact of the proposed measure and prepare a fiscal note and fiscal note summary for the proposed measure and then forward it on to the Attorney General who shall within 10 days approve the legal content and form of the fiscal note summary prepared by the Auditor and forward notice of such approval to the State Auditor. In § 116.180, the Secretary of State is directed, within 3 days after receiving the official summary statement, approved fiscal note summary, and the fiscal note, to certify the official ballot title. Finally, § 116.190 provides a means for citizens wishing to challenge the language of the official ballot title or fiscal note to bring an action in circuit court.

mitted to execute laws already enacted. *Missouri Coalition for the Env't.*, 948 S.W.2d at 133. The Secretary of State, State Auditor and Attorney General are constitutional officers within the executive department. Mo. CONST. art. IV, § 12. By enacting § 116.160 *et seq.*, the legislature has delegated the authority for the preparation of the official ballot summary, the fiscal note and the fiscal note summary and the approval thereof to the Secretary of State, the State Auditor and the Attorney General as executive officers. As noted previously, "the legislature may not control, supervise or manage the execution of a law except by the language contained in the law itself." *State Auditor,* 956 S.W.2d at 233. There is nothing in Chapter 116 that expressly reserves unto the General Assembly the authority to prepare official ballot summaries when it desires to do so, nor is there any implied reservation of such power. Accordingly, the legislature has limited its ability to prescribe ballot language by enacting §§ 116.160 *et seq.* and it cannot now purport to control the execution of the law by adopting Section B of House Bill 1891.

▬ Moreover, the adoption of House Bill 1891 is neither an amendment nor repeal of Sections 116.160 *et seq.* because House Bill 1891 did not comply with the passage and presentment requirements for legislative action. As our Supreme Court noted in *Missouri Coalition for the Environment,* our constitution's passage and presentment requirements establish that "legislative actions, whether by committee, by resolution of one house, or by joint resolution of the whole legislature, cannot amend, modify, rescind or supplant [a statute] ¼ unless the legislature follows the bill passage requirements. The bill must be passed by a majority vote of the House and Senate and the Governor must be given an opportunity to veto the bill." *Missouri Coalition for the Env't.,* 948 S.W.2d at

134. In other words, Section A of House Bill 1891 was adopted by the General Assembly as a referendum issue to be submitted to the voters. Section B (dealing with the issue of how the referendum measure would be described on the ballot) was not intended to be voted on by the people. For such to have been the case, it would be necessary that there be a separate, prior election in which the voters would decide whether to adopt the proposed ballot *title* to be used in a subsequent election on Section A (the concealed weapons referendum itself). Nor was Section B presented to the Governor for his signature or veto. While Section A of House Bill 1891, the referendum measure itself, may hereafter become law if passed by the voters, Section B containing the purported ballot title will not be part of the law even then. Thus, it cannot be said that Section B was an amendment to, or repeal of, §§ 116.160 *et seq.* because it was not adopted in a manner permitted by the Constitution.[5]

Accordingly, the trial court did not err in finding that Section B of House Bill 1891 was without legal effect and in ordering the Secretary of State, the state Auditor and the Attorney General to comply with the provisions of Chapter 116.

## CHALLENGE PURSUANT TO § 116.190

Bergman and Heuiser also claim that the trial court erred by failing to hold that the summary statement prepared by the Secretary of State was insufficient and unfair.[6] The summary, which is required by § 116.160.2 to contain no more than fifty words, is set out in the Appendix to this opinion.

▬ The standard of review of the trial court's decision is that for appellate review in cases tried without a jury. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). We

---

5. In this regard, we note that the preamble of House Bill 1891 does not suggest any intention to amend or repeal any provisions of Chapter 116. The preamble provides: "An Act To repeal sections 571.070 and 571.090, RSMo 1994, and section 571.030, RSMo Supp.1997, relating to certain weapons offenses, and to enact in lieu thereof six new sections relating to the same subject, with penalty provisions and referendum clause."

6. Bergman and Heuiser initially filed their appeal of the Bergman case in the Missouri Supreme Court. On February 18, 1999, the Supreme Court entered an order, *sua sponte,* transferring the appeal to this court. A subsequent application for transfer to the Supreme Court from this court prior to opinion was denied.

must sustain the judgment of the trial court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Id.*

Section 116.190 provides for a challenge of an official ballot title, which consists of the summary statement prepared by the Secretary of State and the fiscal note summary prepared by the State Auditor, on the ground that it is insufficient or unfair. The words "insufficient" and "unfair" mean "inadequate" and "marked by injustice, partiality, or deception." *Hancock v. Secretary of State*, 885 S.W.2d 42, 49 (Mo.App.W.D. 1994). The important test is whether the language fairly and impartially summarizes the purposes of the measure, so that the voters will not be deceived or misled. *Union Elec. Co. v. Kirkpatrick*, 678 S.W.2d 402, 405 (Mo. banc 1984).

Bergman and Heuiser argue that the summary statement is vague, ambiguous, and insufficient because the phrase "various statutory requirements" does not inform the voters of the nature of the requirements specified by statute. Given the constraints of a fifty-word limit on adequately detailing numerous statutory criteria in addition to posing the overall question presented by the referendum, the summary statement prepared by the Secretary of State is a sufficient description of the measure.

Nevertheless, Bergman and Heuiser suggest language which they claim mentions, however briefly, virtually all of the requirements specified by statute. However, even if the language proposed by them is more specific, and even if that level of specificity might be preferable, whether the summary statement prepared by the Secretary of State is the best language for describing the referendum is not the test. The burden is on the opponents of the language to show that the language was insufficient and unfair, and that burden was not met. See *Hancock*, 885 S.W.2d at 49.

7. The fiscal note and the fiscal note summary

Bergman and Heuiser also complain that the summary statement uses a significant portion of its fifty-word limit to note that, in St. Louis County, it would be the chief of police, not a sheriff, who would be required to issue the permits if the requirements were met. Again, even if they are correct that this is not the best utilization of the allotted space, that is not the test. *Id.* The issue is whether the language is insufficient and unfair, and appellants have failed to show that it is. *Id.* Bergman and Heuiser further assert that the summary statement is misleading because it says that law enforcement officials would be "required" to issue permits if the statutory requirements were satisfied. They contend that it would be *more fair and accurate* for the summary statement to say that the officials would be "authorized" to issue permits. They argue that, in several ways, the measure gives a law enforcement officer some discretion in determining whether the applicant has genuinely met the statutory requirements. This may be true; however, if the officer determines that the requirements have, in fact, been satisfied, the issuance of the permit becomes mandatory. Consequently, it is not deceptive or misleading for the summary statement to say that the officer is "required" to issue the permit under such circumstances.

The trial court did not err in finding that the official ballot title certified by the Secretary of State was not insufficient or unfair under the provisions of § 116.190.[7]

Respondent Mills filed a motion to dismiss the appeals herein on various grounds which was taken with the case. The motion is hereby overruled.

Judgment affirmed.

## APPENDIX

The ballot title contained in Section B of House Bill 1891:

"Shall state of local law enforcement agencies be authorized to issue permits to law-abiding citizens at least twenty-one years of age to carry concealed firearms outside their home for personal protection

were not challenged in this appeal.

after having passed a state and federal criminal background check and having completed a firearms safety training course approved by the Missouri Department of Public Safety?"

The ballot title certified by the Secretary of State:

"Shall sheriffs, or in the case of St. Louis County, the chief of police, be required to issue permits to carry concealed firearms to citizens who apply if various statutory requirements are satisfied?

"Because of the discretion given to local law enforcement to verify the accuracy of applications, the costs are uncertain. Application fees are estimated to cover most costs for the first three years. Subsequently, local governments, as a whole, may incur cost from $500,000 to $1,000,000 annually, not covered by fees."