

# SUPREME COURT OF MISSOURI
## en banc

LAWRENCE G. REBMAN,       )       *Opinion issued April 16, 2019, and*
                                         )       *modified June 25, 2019*
            Respondent,     )
                                         )
v.                                  )       No.  SC97307
                                         )
MIKE PARSON, et al.,        )
                                         )
            Appellants.      )

## APPEAL FROM THE CIRCUIT COURT OF COLE COUNTY
### The Honorable Jon E. Beetem, Judge

Lawrence Rebman sought a declaratory judgment that an appropriations statute enacted by the general assembly, House Bill No. 2007, is unconstitutional and a permanent injunction to prevent the State[1] from terminating his employment as an administrative law judge (ALJ).  The Cole County circuit court declared certain provisions of HB2007 unconstitutional as applied to Rebman.  The circuit court severed the unconstitutional language from the statute and permanently enjoined the State from terminating Rebman's

---

[1] Rebman sued the governor, the attorney general, the commissioner of the office of administration, the director of the department of labor and industrial relations, and the director of the division of workers' compensation.  Accordingly, "the State," as used in this opinion, refers to those individuals in their official capacity.

employment pursuant to the unconstitutional language. The State appeals. This Court holds restricting funding for the payment of an ALJ's salary based on that ALJ's date of appointment violates the separation of powers requirement of the Missouri Constitution. Rebman, therefore, was entitled to declaratory relief and a permanent injunction to prevent the State from terminating his employment based on the unconstitutional provisions of HB2007. The circuit court's judgment is affirmed.

**Factual and Procedural Background**

Rebman is an ALJ employed by the department of labor and industrial relations. ALJs preside over claims filed under the workers' compensation laws and have statutory authority to enter awards and approve settlements. Although serving a decision making role, ALJs are employees of the executive branch of government, not the judicial branch. As such, authority to appoint and remove ALJs is vested solely in the director of the department of labor and industrial relations ("the director"). Rebman was appointed as an ALJ in 2013. While the department is authorized by statute to appoint up to 40 ALJs, the number of ALJs the department actually employs depends on the amount of funding for ALJ salaries appropriated by the general assembly each year.

Section 287.615.1(1)[2] sets ALJs' compensation at 90 percent of an associate circuit judge's salary. In 2017, the Missouri General Assembly appropriated sufficient funding to pay the salaries of 28 ALJs. In 2018, the general assembly reduced the total appropriation for ALJ salaries by providing sufficient funding to pay the salaries of only 27 ALJs. In

---

[2] Statutory citations are to RSMo 2000, as amended.

2

addition to reducing the total appropriation for ALJ salaries, the general assembly placed restrictions on how the appropriated funds could be used. Specifically, HB2007 provided the funds appropriated for the payment of ALJ salaries could be used to pay only the salaries of ALJs appointed before 2012 and after 2015. The statute specifically appropriated $2,480,240 "[f]or the purpose of funding Administrative Law Judges appointed on or prior to January 1, 2012," and $859,334 "[f]or the purpose of funding Administrative Law Judges appointed on or after January 1, 2015." Rebman was the only ALJ appointed between 2012 and 2015. The director of the division of workers' compensation ("division director"), therefore, informed Rebman his employment as an ALJ would be terminated when the funding for fiscal 2017 expired because the funding restrictions contained in HB2007 prevented the department from using its appropriated funds to pay his salary.

In a letter dated May 25, 2018, the division director informed Rebman his employment as an ALJ would terminate June 15, 2018. Rebman filed a declaratory judgment action on June 7, 2018, seeking a declaration that the funding restrictions contained in HB2007 were unconstitutional and a permanent injunction to prevent the State from terminating his employment as an ALJ. Rebman petitioned the circuit court for a temporary restraining order the same day. The circuit court issued a temporary restraining order to prevent the State from terminating Rebman's employment while his case proceeded. The circuit court ultimately entered judgment in favor of Rebman, declaring HB2007 unconstitutional to the extent it restricted the use of funds appropriated for the payment of ALJ salaries based on an ALJ's date of appointment and permanently enjoining

3

the State from terminating Rebman's employment pursuant to the unconstitutional funding restrictions. The State appeals.

## Jurisdiction and Standard of Review

The circuit court found HB2007 unconstitutional. This Court has exclusive appellate jurisdiction over cases challenging the validity of a statute. MO. CONST. art. V, § 3.

"When reviewing a declaratory judgment, an appellate court's standard of review is the same as in any other court-tried case." *Guyer v. City of Kirkwood*, 38 S.W.3d 412, 413 (Mo. banc 2001). "[T]he trial court's decision should be affirmed unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Id*. "Challenges to a statute's constitutional validity are questions of law, which this Court reviews *de novo*." *City of Normandy v. Greitens*, 518 S.W.3d 183, 190 (Mo. banc 2017).

## Analysis

The State raises multiple points on appeal. The central issue is whether an appropriations statute that precludes the director from exercising discretion over certain personnel choices by effectively requiring the termination of a specific ALJ violates the separation of powers requirement of the Missouri Constitution.

I. **HB2007 violates the separation of powers requirement of the Missouri Constitution.**

The separation of powers is a fundamental principle embedded in the Missouri Constitution. Article II, section 1 of the Missouri Constitution provides:

4

> The powers of government shall be divided into three distinct departments--the legislative, executive and judicial--each of which shall be confided to a separate magistracy, and no person, or collection of persons, charged with the exercise of powers properly belonging to one of those departments, shall exercise any power properly belonging to either of the others, except in the instances in this constitution expressly directed or permitted.

"The purpose of the doctrine of separation of powers … is to prevent the abuses that can flow from the centralization of power." *State Tax Comm'n v. Admin. Hearing Comm'n*, 641 S.W.2d 69, 73-74 (Mo. banc 1982). This principle reflects the Framers' "belief in Thomas Jefferson's proposition that concentration of the three powers in the same hands is precisely the definition of despotic government." *Mo. Coal. for Envtl. v. Joint Comm. on Admin. Rules,* 948 S.W.2d 125, 134-35 (Mo. banc 1997) (internal quotations omitted). It "prohibits one branch from exercising powers belonging to another." *City of Normandy*, 518 S.W.3d at 200. As James Madison wrote in Federalist No. 47, "The accumulation of all powers, legislative, executive, and judiciary, in the same hands … may justly be pronounced the very definition of tyranny." For these reasons and others, the separation of powers doctrine is "fundamentally vital to our form of government." *State ex inf. Danforth v. Banks*, 454 S.W.2d 498, 500 (Mo. banc 1970).

In the most general terms, the legislative branch is charged with making the law; the executive branch is charged with enforcing the law; and, as Chief Justice Marshall wrote more than two centuries ago, "[i]t is emphatically the province and duty of the judicial department to say what the law is." *Marbury v. Madison*, 5 U.S. 137, 177 (1803). To facilitate its constitutional prerogative, the general assembly is vested with both the

authority and the responsibility to raise revenue and allocate funds from the treasury to pay the State's expenses.

The Missouri Constitution provides, in pertinent part, "All revenue collected and money received by the state shall go into the treasury and the general assembly shall have no power to divert the same or to permit the withdrawal of money from the treasury, except in pursuance of appropriations made by law." MO. CONST. art. III, § 36; *see also Henry v. Manzella*, 201 S.W.2d 457, 459 (Mo. banc 1947) (recognizing that enacting statutes "for levying taxes and providing the means of enforcement are within the unquestioned power of the legislature"). The constitution vests this power of the purse in the general assembly for good reason. The legislative branch is historically the branch of government closest to the people and the branch that most directly represents the citizens of this state. The power of the purse, however, is not unlimited. The general assembly may not use its appropriation authority to encroach on powers vested solely in the separate, coequal branches of government.

Here, Rebman sought a declaratory judgment holding HB2007 is unconstitutional. The declaratory judgment is intended "to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations." § 527.120. The interest of being "free from the constraints of an unconstitutional law" is an interest that "is entitled to legal protection." *Mo. Alliance for Retired Ams. v. Dep't of Labor & Indus. Relations*, 277 S.W.3d 670, 677 (Mo. banc 2009).

Rebman argues HB2007 is unconstitutional because it violates the separation of powers requirement of the Missouri Constitution by infringing on the director's authority

6

to appoint and remove ALJs. "A statute is presumed to be constitutional and will not be invalidated unless it clearly and undoubtedly violates some constitutional provision and palpably affronts fundamental law embodied in the constitution." *Sch. Dist. of Kan. City v. State*, 317 S.W.3d 599, 604 (Mo. banc 2010) (internal quotations omitted). "Doubts will be resolved in favor of the constitutionality of the statute." *Id*. "The person challenging the validity of the statute has the burden of proving the act clearly and undoubtedly violates the constitutional limitations." *Id*.

In this case, the funding restraints in HB2007 demonstrate a manifest encroachment on executive authority by the general assembly. Article IV, § 19 of the Missouri Constitution vests the power to "select and remove all appointees in the department" exclusively with "[t]he head of each department." Although HB2007 does not expressly require the director to terminate Rebman's employment, the funding restrictions effectively leave the director without discretion to decide which ALJ to terminate to stay within the limits of the general assembly's appropriation for ALJ salaries. This attempt by the general assembly to select and remove ALJs in the department through the enactment of HB2007 violates article IV, § 19 and article II, § 1.

The State argues HB2007 is a constitutional exercise of the general assembly's authority over appropriations and the disposition of tax revenue. Pursuant to this power, the State contends the general assembly has plenary authority to defund ALJ positions as it sees fit. But the State's characterization of the general assembly's appropriation authority as absolute is misplaced. To be sure, the general assembly "has the undoubted power to make or to refuse to make an appropriation authorized by the Constitution, and it

7

has the power to create or abolish an office when unrestrained by constitutional limitations." *State ex rel. Tolerton v. Gordon,* 139 S.W. 403, 410 (Mo. 1911). Additionally, "[t]he legislature may … attempt to control the executive branch … by the power of appropriation." *State Auditor v. Joint Comm. on Legislative Research*, 956 S.W.2d 228, 233 (Mo. banc 1997) (internal quotations omitted). It is clear, therefore, the general assembly may exert some degree of influence over the decisions of the executive branch. But it is equally clear executive departments are constitutionally empowered to make personnel choices without interference by the general assembly. *See* MO. CONST. art. IV, § 19. It is from this principle this Court concludes the General Assembly may not compel an executive department, directly or indirectly, to fire a specific employee.

Here, the general assembly violated the separation of powers requirement by effectively compelling the director to terminate the employment of a specific ALJ through the funding restrictions of HB2007. The State argues the general assembly's power to create and abolish executive offices grants authority to effectively single out certain executive employees for termination. But this assertion runs afoul of the separation of powers requirement of article II. True, the general assembly has the power "to create or abolish an office," but only "when unconstrained by constitutional limitations." *Tolerton*, 139 S.W. at 410. Although the general assembly may "create" an office, only the department director may decide who will hold that office. Indeed, the general assembly "has not the power to say who shall not be compensated out of an appropriation." *Id*.

Based on these principles, the general assembly may control how many ALJs the department can appoint, but it may not dictate who will fill those positions. Given Rebman

8

was the only ALJ affected by the funding restrictions, the funding restrictions were no more than an attempt by the legislative branch to force the executive branch to terminate a specific employee. Isolating a single executive branch employee in this way exceeded the general assembly's plenary authority to appropriate funds because it effectively precluded the director of the department from selecting which ALJ to dismiss, which is the director's constitutional prerogative.

For these reasons, HB2007 is unconstitutional to the extent it restricts the use of funds appropriated for the payment of an ALJ's salary based on the ALJ's date of appointment. The circuit court's judgment declaring HB2007 unconstitutional is affirmed for this reason.

## II. The unconstitutional language is severed from HB2007.

"The provisions of every statute are severable." § 1.140. When part of a statute is declared unconstitutional, this Court will presume the legislature intended to give effect to the valid portions of the statute. *See* § 1.140; *City of Normandy*, 518 S.W.3d at 197 n.19. Pursuant to § 1.140, this Court will uphold the remainder of the statute unless it finds:

> the valid provisions of the statute are so essentially and inseparably connected with, and so dependent upon, the void provision that it cannot be presumed the legislature would have enacted the valid provisions without the void one; or unless the court finds that the valid provisions, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent.

Here, there is nothing to indicate the date restrictions were so essential or inseparable from the remainder of HB2007 to warrant a presumption the general assembly would not have enacted HB2007 without the unconstitutional restrictions. Nor is there any indication the general assembly would have funded no ALJs unless it could restrict funding

9

by an ALJ's date of appointment. "Therefore, severance is appropriate." *City of Normandy*, 518 S.W.3d at 197 n.19. Accordingly, the phrases "appointed on or prior to January 1, 2012" and "appointed on or after January 1, 2015" are severed from HB2007. The remainder of the statute remains in full force and effect. The circuit court's judgment severing the unconstitutional language from HB2007 is affirmed.

## III. The State is permanently enjoined from terminating Rebman based on the funding restrictions severed from HB2007.

The circuit court's judgment permanently enjoined the State from terminating Rebman's employment as an ALJ pursuant to the unconstitutional funding restrictions of HB2007. The State, citing *State ex rel. Director of Revenue v. Gabbert*, 925 S.W.2d 838 (Mo. banc 1996), argues the circuit court erred by issuing the injunction because the prospect of harm to other parties and the public interest at stake do not warrant injunctive relief. The State, however, mistakes the type of injunctive relief the circuit court awarded.

*Gabbert* addresses "the elements required to obtain a **preliminary** injunction." *Id.* at 839 (emphasis added). But the circuit court, in this case, awarded permanent injunctive relief, and the State's appeal of the circuit court's permanent injunction is the issue currently before this Court. Although a party must demonstrate a risk of irreparable injury to obtain either preliminary or permanent injunctive relief, a party seeking a permanent injunction must show only irreparable harm and a lack of adequate remedy at law. *City of Greenwood v. Martin Marietta Materials, Inc.*, 311 S.W.3d 258, 265 (Mo. App. 2010).

With respect to Rebman's injury, the State argues a loss of employment cannot constitute irreparable harm because a terminated employee may seek damages in the form

10

of lost wages.  But this is not an ordinary case of employment termination.  Here, the division director informed Rebman the legislature would terminate his employment at a set date in violation of the constitution's separation of powers requirement.  The United States Supreme Court has held being subject to an unconstitutional statute, "for even minimal periods of time, unquestionably constitutes irreparable injury."  *Elrod v. Burns*, 427 U.S. 347, 373 (1976).[3]  Because the funding restrictions of HB2007 would result in his employment being unconstitutionally terminated, Rebman was subject to an unconstitutional statute and, therefore, irreparably injured.

Rebman also has no adequate remedy at law.  It is true that persons affected by unconstitutional statutes often have adequate means of addressing those constitutional violations without seeking a declaratory judgment.  *See State ex rel. SLAH, L.L.C. v. City of Woodson Terrace*, 378 S.W.3d 357, 362 (Mo. banc 2012) (holding statute establishing procedure for taxpayer to challenge tax as unconstitutional provided adequate remedy at law to preclude declaratory judgment); *Schaefer v. Koster*, 342 S.W.3d 299, 300 (Mo. banc 2011) (holding declaratory judgment action inappropriate because criminal defendant could challenge constitutional validity of penalty enhancement statute during regular course of criminal prosecution).  But seeking a declaratory judgment was appropriate in this case because Rebman would have had no other way to challenge the constitutional validity of HB2007.  Given Rebman would have been left without recourse if he were

_____

[3]  Although *Elrod* came before the United States Supreme Court upon the denial of preliminary injunctive relief, *see* 427 U.S. at 350, as explained above, a party seeking either preliminary or permanent injunctive relief must prove he or she will suffer irreparable injury unless the court enters an injunction.

11

terminated pursuant to the unconstitutional language, he had no adequate remedy at law. Accordingly, the circuit court's judgment permanently enjoining the State from terminating Rebman based on the unconstitutional funding restrictions is affirmed.

**IV.     The circuit court's order does not result in the judiciary directing the expenditure of state funds.**

Finally, the State argues the circuit court's order encroaches on the general assembly's plenary authority to appropriate funds by ordering the expenditure of state funds not authorized by a duly enacted appropriations statute. The State characterizes the circuit court's order as an order to the department to spend money it does not have on Rebman's salary because, even after the date restrictions are severed from the statute, the general assembly appropriated only enough funds to pay the salaries of 27 ALJs, not 28. The State argues, then, the circuit court's order leaves the department with no choice but to draw on funds not appropriated for the payment of ALJ salaries to pay Rebman's salary. The State, however, mischaracterizes the nature of the circuit court's order.

The judiciary, of course, has no authority to appropriate funds. The circuit court's order, however, did not direct the department to spend funds the general assembly had not appropriated. The general assembly specifically appropriated $3,339,574 to pay ALJ salaries, and the circuit court did not order the department to spend in excess of this appropriation for the stated purpose. Nor did the circuit court order the department to retain Rebman. Rather, the circuit court merely declared it would be unconstitutional to terminate Rebman based on the date restrictions of the appropriations statute. Indeed, the circuit court expressly noted nothing in the order prohibited the director "from terminating any

ALJ, including but not limited to [Rebman], in order to not exceed its appropriation for administration, so long as the basis for the termination is otherwise constitutional and legally permissible." Likewise, nothing in the circuit court's order limited the director's constitutional authority and discretion over how to spend the appropriation for ALJ salaries.

Accordingly, the circuit court did not order the expenditure of state funds not lawfully appropriated. Far from requiring the department to retain an employee whom the general assembly did not appropriate sufficient funds to pay, the circuit court's judgment simply left the decision of how to spend the appropriation for ALJ salaries to the discretion of the director. This is all the constitution requires.

## Conclusion

For the reasons set forth above, HB2007 is unconstitutional to the extent it restricts the use of funds for the payment of ALJ salaries based on the ALJ's date of appointment, as applied to Rebman, because doing so violates the separation of powers requirement of the Missouri Constitution. The circuit court properly declared HB2007 to be unconstitutional and enjoined the State from terminating Rebman's employment on the basis of the severed language; therefore, its judgment is affirmed.[4]

_____
W. Brent Powell, Judge

All concur.

_____

[4] The circuit court also declared HB2007 invalid to the extent it purported to remove Rebman for cause without following the procedure laid out in § 287.610. This Court does not consider the interplay between § 287.610 and HB2007.