CONSERVATION FEDERATION OF
MISSOURI, et al., Appellants,

v.

Richard A. HANSON, et
al., Respondents.

No. 80862.

Supreme Court of Missouri,
En Banc.

June 1, 1999.

Rehearing Denied June 29, 1999.

Dale C. Doerhoff, Thomas A. Vetter, Ronald K. Medin, Jefferson City, for Appellants.

Marc H. Ellinger, Keith A. Thornburg, Jefferson City, for Margaret Kelly.

Jeremiah W. (Jay) Nixon, Atty. Gen., John B. Munich, Dep. Atty. Gen., Robert Presson, Asst. Atty. Gen., Jefferson City, for Richard Hanson, Bob Holden and Quentin Wilson.

Jane Smith, Jefferson City, for Conservation Commission of Missouri.

RONNIE L. WHITE, Judge.

Article IV, section 43 of Missouri's constitution imposes a one-eighth of one percent sales tax, the proceeds of which are to be used by the State conservation commission for the purpose of conserving Missouri's natural heritage. The trial court declared that these conservation sales tax proceeds were included in "Total State Revenues" for the purposes of calculating the state taxation and spending ceilings under the Hancock Amendment,[1] and that the monies set aside for conservation purposes by article IV, section 43(b) were available to the General Assembly to make the refund payment required by article X, section 18(b). We find that diversion of these monies for the Hancock Amendment refund prevents them from being used or expended for permissible conservation purposes and, therefore, that the trial court's ruling is contrary to article IV, section 43. Similarly, because the requirement that such expenditures be made was approved by the voters, we conclude that revenue from the conservation sales tax is not includable in Total State Revenues. Accordingly, the judgment is reversed and the cause is remanded with directions to enter judgment in favor of Appellants.

1. Mo. Const. art. X, secs. 16–24.

## I.

Article IV, section 43 establishes the conservation sales tax and mandates how the funds raised by the tax are to be expended:

(a) For the purpose of providing additional moneys to be expended and used by the conservation commission, department of conservation, for the control, management, restoration, conservation and regulation of the bird, fish, game, forestry and wildlife resources of the state, including the purchase or other acquisition of property for said purposes, and for the administration of the laws pertaining thereto, an additional sales tax of one-eighth of one percent is hereby levied and imposed upon all sellers for the privilege of selling tangible personal property or rendering taxable services at retail in this state. . . .

(b) The moneys arising from the additional sales and use taxes provided for in section 43(a) hereof and all fees, moneys or funds arising from the operation and transactions of the conservation commission, department of conservation, and from the application and the administration of the laws and regulations pertaining to the bird, fish, game, forestry and wildlife resources of the state and from the sale of property used for said purposes, shall be expended and used by the conservation commission, department of conservation, for the control, management, restoration, conservation and regulation of the bird, fish, game, forestry and wildlife resources of the state, including the purchase or other acquisition of property for said purposes, and for the administration of the laws pertaining thereto, and for no other purpose. The moneys and funds of the conservation commission arising from the additional sales and use taxes provided for in § 43(a) hereof shall also be used by the conservation commission, department of conservation, to make

payments to counties for the unimproved value of land for distribution to the appropriate political subdivisions as payment in lieu of real property taxes for privately owned land acquired by the commission after July 1, 1977, and for land classified as forest cropland in the forest cropland program administered by the department of conservation in such amounts as may be determined by the conservation commission, but in no event shall amount determined be less than the property tax being paid at the time of purchase of acquired lands.

Article X, section 18(b) requires the state to refund "excess revenue" to taxpayers under certain, specific circumstances:

> For any fiscal year in the event that total state revenues exceed the revenue limit established in this section by one percent or more, the excess revenues shall be refunded pro rata based on the liability reported on the Missouri state income tax (or its successor tax or taxes) annual returns filed following the close of such fiscal year. If the excess is less than one percent, the excess shall be transferred to the general revenue fund.

As used in this section, Total State Revenues ("TSR") includes:

> all general and special revenues, license and fees, excluding federal funds, as defined in the budget message of the governor for fiscal year 1980–1981. Total state revenues shall exclude the amount of any credits based on actual tax liabilities or the imputed tax components of rental payments, but shall include the amount of any credits not related to actual tax liabilities.[2]

In 1995 and 1996, refunds were due under these provisions, and the General Assembly appropriated more than six million dollars from the conservation commission fund to be refunded to the taxpayers. The conservation commission fund consists of the proceeds of the tax imposed by article IV, section 43(a), all monies derived from the operations and transactions of the conservation commission, as well as all payments to the commission by the federal government. Appellants (the "Federation")[3] filed an action seeking a declaration that moneys in the fund may not be refunded under the Hancock Amendment and that the sales tax proceeds in the fund are not includable in TSR.[4] The case was submitted on cross-motions for partial summary judgment. The trial court granted respondent state auditor's ("Auditor's") motion and denied the Federation's motion, entering judgment declaring that all non-federal monies in the fund were includable in TSR and that all such monies were available to the General Assembly for the purpose of making the refund mandated by the Hancock Amendment. On the Federation's motion, disbursement of the refund amount from the fund was stayed pending the outcome of this appeal.

"Appellate review of the propriety of summary judgment is essentially *de novo.*"[5]

In its first point on appeal, the Federation claims that the trial court erred by entering summary judgment against it because article IV, section 43(b) requires the conservation fund to "be expended and used by the conservation commission" for the conservation purposes

---

2. Mo. Const. art. X, sec. 17(1).

3. Appellants include the Conservation Federation of Missouri, a Missouri corporation, which sponsored the initiative petition that led to the adoption of article IV, section 43, and several individual Missouri taxpayers. Respondents include the commissioner of administration, director of the department of revenue, the state treasurer, the state auditor and the conservation commission.

4. Appellants initially contended that operational expenses of the commission were also excludable from TSR, a point they have now abandoned, and upon which we express no opinion.

5. *Community Title Co. v. Stewart Title Guar. Co.,* 977 S.W.2d 501, 502 (Mo. banc 1998).

specified therein and "for no other purpose." A constitutional provision is "interpreted according to the intent of the voters who adopted it."[6] To the degree that the Hancock Amendment and article IV, section 43(b) conflict, the latter controls, since the provisions were adopted at the same general election on November 4, 1980 and section 43(b) received a larger number of affirmative votes.[7]

Respondents Hanson, Holden and Wilson ("Respondents") contend that these two provisions are not in conflict and that the trial court properly ruled that section 43(b) permits a Hancock refund from the conservation commission fund. In particular, Respondents argue, based upon plain meaning, that a "refund" is neither a "use" nor an "expenditure" of conservation funds, but merely a repayment to taxpayers. Accepting, *arguendo*, that a refund is not an expenditure, the argument still fails. Article IV, section 43(b) is not, as Respondents' analysis requires, phrased as a prohibition that conservation funds shall not be used or expended for any purposes but those specified. Rather, the section is written as a positive command. These funds "shall be used and expended by the conservation commission...." Thus, the constitution requires that all such monies must be used and expended by the commission for the specified, permissible conservation purposes. Any action by the General Assembly that purports to appropriate these funds for any purpose that is not an authorized use or expenditure by the commission violates this section and is unconstitutional, even if such an appropriation is termed a refund or a repayment.

Article IV, section 43(b) requires that the conservation funds identified therein be used and expended by the commission for the purposes specified in that section.

Any monies refunded to taxpayers or transferred to the general revenue pursuant to the Hancock Amendment are not used or expended as that section requires, and such refund or transfer is, therefore, unconstitutional. Accordingly, the trial court erred in failing to grant Appellants' motion for partial summary judgment on this point.

## II.

 In its second point on appeal, the Federation contends that the trial court erred in granting the Auditor's summary judgment motion and declaring that all non-federal monies in the conservation commission fund are included in TSR. The trial court determined that the conservation sales tax was received into the state treasury and was subject to appropriation by the General Assembly and, therefore, that the tax receipts were includable in TSR. This holding is based on this Court's definition of "revenue" for TSR purposes: "funds may not be considered *revenue* in the context of TSR unless they meet the two-part test derived from the definition of revenue adopted in *Buechner:* (1) the funds must be received into the state treasury, and (2) the funds must be subject to appropriation."[8] While funds must be revenue, within the *Buechner* definition, to be included in TSR, that determination does not end the inquiry. This Court has consistently interpreted the definition of TSR in light of the "central purpose" of the Hancock Amendment, which is "to limit taxes by establishing tax and revenue limits and expenditure limits for the state ... which may not be exceeded without voter approval."[9] Thus, revenue produced by a voter-approved tax increase is not counted towards the Hancock taxation cap because article X, section 16, limits the

---

6. *Savannah R–III School Dist. v. Public School Retirement System of Missouri,* 950 S.W.2d 854, 859 (Mo. banc 1997).

7. Mo. Const. art. III, sec. 51.

8. *Kelly v. Hanson,* 959 S.W.2d 107, 111 (Mo. banc 1997) (citing *Buechner v. Bond,* 650 S.W.2d 611, 613 (Mo. banc 1983)).

9. *Buechner,* 650 S.W.2d at 613 (quoting *Buchanan v. Kirkpatrick,* 615 S.W.2d 6, 13 (Mo. banc 1981)).

scope of the Hancock Amendment to ensuring that "state taxation and spending may not be increased above the limits specified herein without direct voter approval...." [10]

The parties agree that, under *Goode,* the revenue from the conservation sales tax would be excluded from TSR and would not count towards the Hancock tax ceiling if the tax had been directly approved by the voters after adoption of the Hancock Amendment. Where the parties differ is on the effect of the fact that article IV, section 43(a), the constitutional provision imposing the conservation tax, was adopted by a vote of the people in 1976— four years before the Hancock Amendment was approved. Respondents argue that article X, section 16 refers only to new or increased taxation and spending beyond the level established in 1980 by the Hancock Amendment, a level that includes any voter-approved taxation measures adopted prior to that date. Therefore, Respondents argue, *Goode* should be limited to exclude from the revenue ceiling only those taxes approved by the people after adoption of the Hancock Amendment. The Federation, in contrast, urges the Court to rule that any tax approved by the people, whether before or after the Hancock Amendment was adopted, falls under the *Goode* rule and is, therefore, excludable from TSR.

Both these arguments overlook the particular factual situation surrounding the conservation sales tax. While the tax imposed by section 43(a) was adopted prior to the Hancock Amendment, article IV, section 43(b) was adopted contemporaneously with Hancock and, therefore, went into effect after the Hancock Amendment's baseline period for TSR, which was fiscal year 1980–81. Thus, this case presents the unique situation that a tax has been approved by the voters prior to the Hancock Amendment, but the voter-approved (indeed voter-mandated) spending of that revenue was approved after Hancock's initial tax and spending ceiling was calculated.

The Hancock Amendment closely links taxation and spending, beginning in article X, section 16, which specifically links "state taxation and spending" in defining what may not be increased without direct voter approval. TSR in the 1980–81 fiscal year is not used solely to calculate the article X, section 18 limitation on tax collection by the State, but also to calculate the spending ceiling in article X, sec. 20, beyond which the State may not incur expenses. By approving language mandating specific conservation spending at the same general election as the Hancock Amendment, by a greater affirmative vote, the people expressed an intent not to limit their own prerogative to tax and spend for conservation purposes, outside of any limits they might place on the General Assembly through the Hancock Amendment. Contemporaneous adoption of article IV, section 43(b), amounts to "direct voter approval" as envisioned in the first sentence of article X, section 16. Revenue from a voter-approved tax increase is not counted towards the tax and spending ceiling based on TSR, because such increase in tax collection is with the direct consent of the voters. Similarly, any increase in spending that arises from the voter-approved mandate of article IV, section 43(b) that all monies collected by the conservation sales tax be expended and used for conservation renders such spending voter-approved and, thus, outside the purpose of the Hancock Amendment's design to limit only that taxation and spending not approved by the people. Accordingly, under the logic of *Goode,* revenue from a constitutionally imposed tax, which is entirely directed to voter-mandated spending, is not counted against the Hancock Amendment's tax ceiling and is, therefore, not included in TSR. Thus, the trial court erred in granting summary judgment in favor of the Auditor.

**10.** *See Goode v. Bond,* 652 S.W.2d 98 (Mo. banc 1983).

The judgment of the trial court is reversed and the cause is remanded with directions to enter judgment in favor of Appellants declaring that article IV, section 43(b) prohibits the disbursement of monies specified in that section for the purpose of making the refund required by article X, section 18, that revenue derived from the one-eighth of one percent sales tax imposed by article IV, section 43(a) is not includable in Total State Revenues under article X, section 17(1), and for further proceedings consistent with this opinion.

BENTON, C.J., PRICE, LIMBAUGH and COVINGTON, JJ., and SHRUM and CRANDALL, Special Judges, concur.

HOLSTEIN and WOLFF, JJ., not participating.

