

# SUPREME COURT OF MISSOURI
# en banc

CONSERVATION COMMISSION and )  *Opinion issued June 13, 2023*
MISSOURI DEPARTMENT OF )
CONSERVATION, )
)
         Respondents, )
)
v. ) No. SC99092
)
ANDREW BAILEY, IN HIS OFFICIAL )
CAPACITY AS ATTORNEY GENERAL )
OF MISSOURI, and KEN ZELLERS, )
IN HIS OFFICIAL CAPACITY AS )
COMMISSIONER OF THE OFFICE OF )
ADMINISTRATION, )
)
         Appellants. )

### APPEAL FROM THE CIRCUIT COURT OF COLE COUNTY
**The Honorable S. Cotton Walker, Judge**

PER CURIAM

During the 2020 legislative session, the General Assembly enacted House Bill No. 2019 (2020), which appropriated $21 million to the Conservation Commission. Days prior to its final passage, the General Assembly removed language from HB 2019 regarding use of the Conservation Commission's funds, including for land acquisition and payments

in lieu of taxes (PILT).[1] When the Conservation Commission later sought to withdraw funds from the treasury to pay for a land acquisition and for PILT, its requests were denied by the Office of Administration due to the absence of such language in HB 2019.

Article IV, sections 40-44 of the Missouri Constitution grant the Conservation Commission plenary authority to expend and use conservation funds for enumerated purposes, including:

> the control, management, restoration, conservation and regulation of the bird, fish, game, forestry and wildlife resources of the state, ***including the purchase or other acquisition of property*** for said purposes, and … to make payments to counties for the unimproved value of land for distribution to the appropriate political subdivisions as ***payment in lieu of real property taxes***[.]

Mo. Const. art. IV, sec. 43(b) (emphasis added). The General Assembly lacks the authority to restrict the Conservation Commission from using its funds for these constitutionally enumerated purposes. In passing HB 2019, the General Assembly, invaded the constitutional authority of the Conservation Commission by attempting to limit the constitutionally enumerated purposes for which the Conservation Commission could use its funds. Accordingly, the circuit court's judgment is affirmed.

---

[1] PILT are payments made by the Conservation Commission to county governments to help offset losses in property taxes to counties that occur when particular lands achieve tax-exempt status, such as when they become state-owned.

**Background**[2]

In the 1930s, Missouri faced a variety of grave ecological threats.[3] While the General Assembly was responsible for addressing conservation issues, political influence prevented progress. Other state agencies, namely the State Fish and Game Department, had limited authority in this area, but a lack of funding caused issues.

To remedy these concerns, the people of Missouri proposed an initiative petition and, in 1936, amended the Missouri Constitution to establish the Conservation Commission as a nonpartisan government entity that would be insulated from politics, properly funded, and provided with adequate authority to address Missouri's conservation needs. The Conservation Commission was created and vested with the sole authority for

> [t]he control, management, restoration, conservation and regulation of the bird, fish, game, forestry and all wildlife resources of the state, including hatcheries, sanctuaries, refuges, reservations and all other property owned, acquired or used for such purposes and the acquisition and establishment thereof, and the administration of all laws pertaining thereto[.]

Mo. Const. art. XIV, sec. 16 (1875) (as amended in 1936). The constitutional amendment also limited the expenditure and use of moneys generated from the Conservation Commission's activities to specific purposes. *Id.*

When Missouri adopted a new constitution in 1945, the people retained the Conservation Commission provisions adopted in 1936 and incorporated them into the new

---

[2] The facts and information presented in this section are from stipulations and exhibits submitted to the circuit court.

[3] The state suffered from a drought that began in 1933 and continued through 1936. A 1935 wildlife survey estimated the state's breeding reserve for common species stood at precipitously low levels, with only 2,500 turkeys, 1,800 deer, and 100 beavers statewide, among other alarming figures.

3

constitution as article IV, sections 40-44.  In 1976, voters again used the initiative petition process to remedy the Conservation Commission's financial difficulties due to inflation and increased demand for services.  The 1976 amendment repealed the original provision relating to the Conservation Commission's authority to expend and use conservation funds and, in lieu thereof, enacted article IV, sections 43(a)-(c).  Article IV, section 43(a) imposed an additional sales and use tax of one-eighth of one percent to generate additional revenue for conservation purposes.  Section 43(b) provided monies generated from the Conservation Commission's activities and its sales and use taxes

> shall be expended and used by the conservation commission, department of conservation, for the control, management, restoration, conservation and regulation of the bird, fish, game, forestry and wildlife resources of the state, including the purchase or other acquisition of property for said purposes, and for the administration of the laws pertaining thereto, and for no other purpose.

In 1980, the people again amended section 43(b) to authorize funds arising from the conservation sales and use taxes to be used to make PILT and grant the Conservation Commission authority to determine the amounts used for that purpose above a set minimum.[4]  Mo. Const. art. IV, sec. 43(b).

---

[4] In full, the language added in the 1980 amendment reads:

> The moneys and funds of the conservation commission arising from the additional sales and use taxes provided for in 43(a) hereof shall also be used by the conservation commission, department of conservation, to make payments to counties for the unimproved value of land for distribution to the appropriate political subdivisions as payment in lieu of real property taxes for privately owned land acquired by the commission after July 1, 1977 and for land classified as forest cropland in the forest cropland program administered by the department of conservation in such amounts as may be determined by the conservation commission, but in no event shall the amount

In the nearly 90 years since its initial creation, the Conservation Commission, in accordance with the current article IV, sections 40-44, has used conservation funds to acquire significant amounts of land from willing sellers for conservation purposes and public enjoyment. It has also consistently made annual PILT since 1980.

To access conservation funds, the Conservation Commission has, upon request, provided a budget to the General Assembly and the Governor. The General Assembly then made an appropriation to cover the budget requested. The Conservation Commission obtained the money by submitting a request for certification to the Commissioner of the Office of Administration, who approved the expenditure. This process was followed consistently until the 2020 legislative session.

In 2020, the Conservation Commission approved the purchase of 510 acres of imperiled prairie habitat in St. Clair County as an addition to the Linscomb Wildlife Area for approximately $1 million. The Conservation Commission included this purchase price in its $21 million budget request to the General Assembly for the 2021 fiscal year. The Conservation Commission's budget request also included $900,000 for that year's PILT. At that time, the treasury contained sufficient unencumbered conservation funds to pay for the Conservation Commission's entire budget, including the purchase of the St. Clair County property and PILT.

---

determined be less than the property tax being paid at the time of purchase of acquired lands.

Mo. Const. art. IV, sec. 43(b).

In January 2020, HB 2019, an appropriation bill, was introduced in the General Assembly. HB 2019 set out appropriations for various departments, including the full $21 million requested by the Conservation Commission.[5] The original language in HB 2019 provided, in accordance with the language in article IV, section 43(b), that conservation funds could be used by the Conservation Commission

> [f]or stream access acquisition and development; lake site acquisition and development; financial assistance to other public agencies or in partnership with other public agencies; land acquisition for upland wildlife, state forests, wetlands, and natural areas and additions to existing areas; for major improvements and repairs (including materials, supplies, and labor) to buildings, roads, hatcheries, and other departmental structures; and for soil conservation activities, erosion control, and land improvement on department land[.]

But, in an attempt to restrict the Conservation Commission's constitutionally enumerated use of conservation funds, the General Assembly adopted a late amendment, four days prior to passage, removing several constitutional purposes for which the appropriation could be used. As amended, HB 2019 continued to provide the full $21 million appropriation but purported to limit the purposes for which the Conservation Commission could expend and use the funds:

> [f]or stream access acquisition and development; lake site acquisition and development; financial assistance to other public agencies or in partnership with other public agencies; land acquisition for upland wildlife, state forests, wetlands, and natural areas and additions to existing areas; … major improvements and repairs (including materials, supplies, and labor) to buildings, roads, hatcheries, and other departmental structures; and for soil conservation activities, erosion control, and land improvement on department land[.]

---

[5] The General Assembly also passed another appropriation bill in 2020, HB 2017, that included line items for land acquisition "additions to existing areas" but that corresponded to capital improvement projects originally initiated or approved during prior fiscal years.

6

This restriction on how the conservation funds could be expended marked the first—and only—time in the Conservation Commission's history that the General Assembly restricted the Conservation Commission from expending and using appropriated conservation funds for land acquisition and PILT as provided by the constitution.[6]

The Conservation Commission asked the Commissioner of the Office of Administration to certify payment for the St. Clair County property in August 2020 and instructed that the payment be debited against the $21 million appropriation passed by the General Assembly in HB 2019. The Conservation Commission subsequently made a separate request to certify $900,000 in PILT. The Commissioner refused to certify either payment because, in her opinion, HB 2019 did not permit funds to be used for those purposes.

The Conservation Commission and the Missouri Department of Conservation filed an action against the Attorney General and the Commissioner of the Office of Administration (collectively, the "State") seeking declaratory relief to require certification

---

[6] Notably, in prior appropriation bills covering the Conservation Commission's budget, HB 2019 (2018) and HB 19 (2019), the General Assembly used language identical to the language in the original version of HB 2019 (2020) to appropriate money to the Conservation Commission "[f]or stream access acquisition and development; lake site acquisition and development; financial assistance to other public agencies or in partnership with other public agencies; land acquisition for upland wildlife, state forests, wetlands, and natural areas and additions to existing areas[.]" This exact language was again included in HB 19 (2021), HB 3019 (2022), and HB 19 (2023). The restriction on which constitutionally enumerated purposes the Conservation Commission could expend conservation funds was included only in HB 2019 (2020).

of the payments described above.[7]  The case was submitted on stipulated facts, and the circuit court entered a judgment declaring sections 40-44 of article IV grant the Conservation Commission exclusive authority to expend and use money in the conservation fund within the treasury without an appropriation bill passed by the General Assembly.  It also found, in the alternative, that even if an appropriation bill is required to authorize the expenditure of funds from the conservation fund, HB 2019 was a constitutionally invalid attempt to change the Conservation Commission's authority to expend and use conservation funds because it violated the single subject requirement in article III, section 23.  Accordingly, the circuit court ordered the Commissioner of the Office of Administration "certify the St. Clair land purchase and PILT payments as requested by the Conservation Commission."  The State now appeals.[8]

---

[7] While this case was pending, Ken Zellers assumed the office of Commissioner of the Office of Administration.  Pursuant to Rule 52.13(d), he was automatically substituted as a party.  Nonetheless, the state filed a motion requesting that this Court substitute Ken Zellers for his predecessor, Sarah Steelman.  Substitution of parties is automatic under these circumstances, and, though an order of substitution may be entered at any time, "the omission to enter such an order shall not affect the substitution."  Rule 52.13(d).  As a result, the Court overrules the motion to substitute as moot.  In addition, Attorney General Andrew Bailey was automatically substituted for his predecessor, Eric Schmitt, pursuant to Rule 52.13(d).

In the same motion, the State requests the Court take judicial notice of House Bill No. 19 (2021), an appropriation bill passed after this dispute arose that provides appropriation authority to the Conservation Commission for land acquisition and PILT, a copy of which the State attached as an exhibit to its motion.  The State's motion is hereby sustained to the extent it requests the Court take judicial notice of HB 19 (2021).

[8] This Court has jurisdiction over the appeal pursuant to article V, section 3 of the Missouri Constitution because it involves the validity of a statute of this state.

8

## Standard of Review

"When reviewing a declaratory judgment, an appellate court's standard of review is the same as in any other court-tried case." *Guyer v. City of Kirkwood*, 38 S.W.3d 412, 413 (Mo. banc 2001). In a court-tried case submitted on stipulated facts, the circuit court's judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *See Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976); *see also Incline Vill. Bd. of Trs. v. Edler*, 592 S.W.3d 334, 337 (Mo. banc 2019) ("Because the parties submitted a joint stipulation of material facts, the only question before this court is whether the [circuit] court drew the proper legal conclusions from the facts stipulated." (internal quotation omitted)).

## Analysis

Although the circuit court's judgment and the parties raise multiple issues, the determinative issue in this case is whether the Missouri Constitution permits the General Assembly to limit the Conservation Commission's authority to expend and use conservation funds for the constitutionally enumerated purposes.[9] This Court holds article IV, sections 40-44 grant the Conservation Commission plenary authority to expend and

---

[9] This Court need not address or decide the alternative holdings rendered by the circuit court and, instead, affirms the circuit court's judgment on the above-stated ground. The Court "is primarily concerned with the correctness of the [circuit] court's result, not the route taken by the [circuit] court to reach that result." *Bus. Men's Assurance Co. of Am. v. Graham*, 984 S.W.2d 501, 506 (Mo. banc 1999). The Court will affirm on any ground that supports the circuit court's judgment, regardless of the grounds on which the circuit court relied. *Rizzo v. State*, 189 S.W.3d 576, 578 (Mo. banc 2006).

9

use the conservation funds appropriated in HB 2019 for any of the purposes enumerated in section 43(b).

"When construing a constitutional amendment, the fundamental purpose of constitutional construction is to give effect to the intent of the voters who adopted the [a]mendment." *State v. Shanklin*, 534 S.W.3d 240, 242 (Mo. banc 2017) (internal quotation omitted). The plain language of article IV, sections 40-44 makes clear the people's intent to grant the Conservation Commission plenary authority to expend and use conservation funds for certain enumerated purposes without legislative discretion.

Section 40(a) vests the Conservation Commission with sole authority over

> [t]he control, management, restoration, conservation and regulation of the bird, fish, game, forestry and all wildlife resources of the state, including hatcheries, sanctuaries, refuges, reservations and all other property owned, acquired or used for such purposes and the acquisition and establishment thereof, and the administration of all laws pertaining thereto[.]

Section 41 then expressly grants the Conservation Commission the power to "acquire by purchase, gift, eminent domain, or otherwise, all property necessary, useful or convenient for its purposes[.]" Next, section 43(a) establishes an additional sales and use tax

> [f]or the purpose of providing additional moneys **to be expended and used by the conservation commission**, department of conservation, for the control, management, restoration, conservation and regulation of the bird, fish, game, forestry and wildlife resources of the state, **including the purchase or other acquisition of property for said purposes**, and for the administration of the laws pertaining thereto[.]

(Emphasis added). Finally, section 43(b) expressly provides that the revenue from that tax, as well as other conservation funds,

> **shall be expended and used by the conservation commission**, department of conservation, for the control, management, restoration, conservation and

10

regulation of the bird, fish, game, forestry and wildlife resources of the state, **including the purchase or other acquisition of property for said purposes**, and for the administration of the laws pertaining thereto, and … by the conservation commission, department of conservation, to make [PILT] … in such amounts as may be determined by the conservation commission[.]

(Emphasis added).

Taken as a whole, these constitutional provisions unambiguously (1) require the Conservation Commission to fulfill enumerated purposes, (2) grant the Conservation Commission power to expend and use funds, purchase land, and make PILT to carry out those purposes, and (3) provide a direct source of funding solely devoted to the Conservation Commission's performance of those purposes. These provisions do not, however, leave any room for the General Assembly to interfere with the Conservation Commission's performance of its constitutional purposes. This is because, as discussed above, the very reason behind the Conservation Commission's creation was to remedy the failure of existing government bodies in the 1930s, including the General Assembly, to set aside politics and properly manage Missouri's conservation needs. Given that history, it would make little sense to allow the General Assembly to then impede the Conservation Commission's ability to perform that very role based on the whims of political discretion.

The Conservation Commission's right to expend and use conservation funds for any of the constitutionally enumerated purposes is further evidenced by prior jurisprudence and historical practice. Prior to this dispute, the General Assembly has never attempted to restrict the Conservation Commission's constitutional power to expend and use its funding for land acquisition. The General Assembly has, on prior occasions, included limitations

11

in appropriation bills to attempt to prevent the Conservation Commission from using conservation funds for other purposes enumerated in the constitution, but the Attorney General deemed such actions to be unconstitutional.

For example, in 1953, the General Assembly appropriated funds to the Conservation Commission while providing those funds could not be used for "the rental or erection of a building for use as a central office building of the Conservation Commission[.]" Missouri Attorney General, Opinion Letter on Section 4.510 of House Bill No. 361, Passed by the Sixty-seventh General Assembly (June 11, 1953). The Attorney General determined this restriction on the Conservation Commission's use of conservation funds was "clearly invalid," noting that article IV, sections 40(a) and 43 provide that those funds "shall be expended and used by the commission for [constitutionally enumerated] purposes." *Id.*; *see also* Missouri Attorney General, Opinion Letter on Sections 4.510 and 4.520 of Senate Committee Substitute for House Committee Substitute for House Bill No. 4, Passed by the Sixty-ninth General Assembly (May 29, 1958) (finding the General Assembly's restriction on the Conservation Commission from using appropriated funds for salary increases invalid).

Additionally, in *Conservation Federation of Missouri v. Hanson*, 994 S.W.2d 27, 28-30 (Mo. banc 1999), this Court addressed what amounts to the inverse of the present issue: the General Assembly's utilization of conservation funds for tax refunds under the Hancock Amendment without authorization from the Conservation Commission. In finding that action improper, the Court remarked "**the constitution requires** that [conservation funds] **must be used and expended by the commission** for the specified,

12

permissible conservation purposes." *Id.* at 30 (emphasis added). "Any action by the General Assembly that purports to appropriate [conservation] funds for any purpose **that is not an authorized use or expenditure by the commission** violates [section 43(b)] and is unconstitutional[.]" *Id.* (emphasis added).

This jurisprudence reflects a fundamental principle embedded in the Missouri Constitution: the separation of powers. Article II, section 1 of the Missouri Constitution provides:

> The powers of government shall be divided into three distinct departments—the legislative, executive and judicial—each of which shall be confided to a separate magistracy, and no person, or collection of persons, charged with the exercise of powers properly belonging to one of those departments, shall exercise any power properly belonging to either of the others, except in the instances in this constitution expressly directed or permitted.

Under this constitutional principle, the General Assembly "may not use its appropriation authority to encroach on powers vested solely in the separate, coequal branches of government." *Rebman v. Parson*, 576 S.W.3d 605, 609 (Mo. banc 2019). In *Rebman*, the General Assembly included language in an appropriation bill that prevented funds for administrative law judge (ALJ) salaries within the Department of Labor and Industrial Relations from being used on any ALJ appointed between 2012 and 2015.[10] *Id.* at 607-08. This Court found that restriction to be unconstitutional, as "executive departments are constitutionally empowered to make personnel choices without interference by the general assembly." *Id.* at 610.

---

[10] This restriction would have prevented the Department from retaining Rebman, who was the only ALJ appointed in that timeframe. *Rebman*, 576 S.W.3d at 608.

That same principle applies here.  By adopting article IV, sections 40-44, the people of Missouri created the Conservation Commission within the executive branch and "constitutionally empowered" it to expend and use conservation funds for any of the enumerated purposes in the constitution "without interference" by the General Assembly. *See id.*  The General Assembly may not subvert the will of the people by restricting the Conservation Commission from using appropriated funds for any of the purposes listed in article IV, section 43.

## Conclusion

The circuit court's judgment is affirmed.


Wilson, C.J., Russell, Ransom and Draper, JJ., concur;
Breckenridge, J., dissents in separate opinion filed:
Powell and Fischer, JJ., concur in opinion of Breckenridge, J.



# SUPREME COURT OF MISSOURI
## en banc

CONSERVATION COMMISSION and )
MISSOURI DEPARTMENT OF )
CONSERVATION, )
          )
            Respondents, )
          )
v. )    No. SC99092
          )
ANDREW BAILEY, IN HIS OFFICIAL )
CAPACITY AS ATTORNEY GENERAL )
OF MISSOURI, and KEN ZELLERS, )
IN HIS OFFICIAL CAPACITY AS )
COMMISSIONER OF THE OFFICE OF )
ADMINISTRATION, )
          )
          Appellants. )

### DISSENTING OPINION

I respectfully dissent. The principal opinion construes the provisions of article IV, sections 40-44 of the Missouri Constitution in isolation to reach its conclusion the conservation commission can expend funds for purposes other than those specified in the General Assembly's appropriation in House Bill No. 2019 (2020) ("HB 2019"). In doing so, the principal opinion rules contrary to the Court's prior holdings that "[i]n construing individual sections, the constitution must be read as a whole, considering other sections that may shed light on the provision in question." *Pestka v. State*, 493 S.W.3d 405, 409 (Mo. banc 2016) (quoting *State ex rel. Mathewson v. Bd. of Elec. Comm'rs of St. Louis Cnty.*, 841

S.W.2d 633, 635 (Mo. banc 1992)). Particularly, there are four provisions of the Missouri Constitution relating to the General Assembly's power of appropriation and requirements for withdrawal of money from the treasury that the principal opinion does not properly consider.

The first is article II, section 1. In that section, the constitution divides the powers of government among three branches ("departments"). Article II, section 1 provides:

> The powers of government shall be divided into three distinct departments-- the legislative, executive and judicial--each of which shall be confided to a separate magistracy, and no person, or collection of persons, charged with the exercise of powers properly belonging to one of those departments, shall exercise any power properly belonging to either of the others, except in the instances in this constitution expressly directed or permitted.

Each department has inherent power to accomplish the objects within the scope of that department. *Clark v. Austin*, 101 S.W.2d 977, 988 (Mo. banc 1937); *In re Richards*, 63 S.W.2d 672, 675 (Mo. banc 1933). "Each department of government is essentially and necessarily distinct from the others and [cannot] lawfully trench upon or interfere with the powers of the other." *Mo. Coal. for Env't v. Joint Comm. on Admin. Rules*, 948 S.W.2d 125, 133 (Mo. banc 1997) (internal quotation omitted).

As regards legislative powers, the Missouri Constitution "is not a grant but a restriction or limitation on the legislative powers . . . ." *State v. Atterbury*, 300 S.W.2d 806, 810 (Mo. banc 1957). "The legislature represents the plenary power of the people in our three-partite system and may do everything the people have not denied it the power to do in the constitution." *Pestka*, 493 S.W.3d at 408. One of the legislative powers is "[t]he power of the purse." *Rebman v. Parson*, 576 S.W.3d 605, 609 (Mo. banc 2019). The legislative power of the purse includes "the undoubted power to make or refuse to make an

appropriation authorized by the Constitution." *Id.* at 610. Accordingly, article II, section 1 prohibits the conservation commission as a "person, or collection of persons, charged with the exercise of powers properly belonging to" the executive branch, from exercising the power of appropriation properly belonging to the legislative branch unless *expressly* directed or permitted by another provision of the constitution.

Three other constitutional provisions relate to the General Assembly's exercise of its power to make appropriations. These provisions establish the requirements for the withdrawal of money from the state treasury and articulate the General Assembly's authority to make appropriations in specific amounts for specific purposes. Since Missouri adopted its first constitution in 1820, the Missouri Constitution has required that money can be withdrawn from the treasury only when authorized by an appropriation made by law.[1] The present constitution includes that requirement in article IV, section 28, which provides:

> *No money shall be withdrawn from the state treasury except by warrant drawn in accordance with an appropriation made by law*, nor shall any obligation for that payment of money be incurred unless the commissioner of administration certifies it for payment and certifies *that the expenditure is within the purpose as directed by the general assembly of the appropriation* and that there is in the appropriation an unencumbered balance sufficient to pay it.

(Emphasis added). Similarly, article III, section 36 provides, in relevant part: "All revenue collected and money received by the state shall go into the treasury and *the general assembly*

---

[1] Missouri's first and second constitutions provided: "No money shall be drawn from the treasury but in consequence of appropriations made by law[.]" Mo. Const. art. III, sec. 31 (1820); Mo. Const. art. XI, sec. 6 (1865). Similarly, the State's third constitution, which was in effect when the conservation commission provisions were first adopted, provided: "No moneys shall ever be paid out of the treasury of this State, or any of the funds under its management, except in pursuance of an appropriation by law[.]" Mo. Const. art. X, sec. 19 (1875).

3

*shall have no power to divert the same or to permit the withdrawal of money from the treasury, except in pursuance of appropriations made by law*." (Emphasis added). Although article III, section 36 is a limitation on the General Assembly's power to withdraw money from the treasury, it expressly recognizes the General Assembly's legislative authority to make appropriations. Finally, article IV, section 23 expressly recognizes the General Assembly has the power to make appropriations, which includes the power to determine both the specific amount of money that may be expended and the specific purposes of an appropriation. Article IV, section 23 provides: "Every appropriation law shall distinctly specify the amount and purpose of the appropriation without reference to any other law to fix the amount or purpose." "[A]rticle IV, section 23 makes clear an appropriation is the authority to expend and disburse *a specific amount of money* for a *specified purpose*." *Doyle v. Tidball*, 625 S.W.3d 459, 463 (Mo. banc 2021) (emphasis added).

Together, these provisions mandate an appropriation by the General Assembly distinctly specifying the amount and purpose of the appropriation before money may be withdrawn from the treasury. *See Fort Zumwalt Sch. Dist. v. State*, 896 S.W.2d 918, 922 (Mo. banc 1995) (holding article III, section 36 "forbids any expenditure of state revenues" without "an appropriation by the General Assembly approved by the Governor"). The provisions also prohibit the withdrawal of money "for any purpose other than that specified in an appropriation law." *State ex inf. Danforth v. Merrell*, 530 S.W.2d 209, 213 (Mo. banc 1975). Reading the four provisions together, the legislative power to appropriate funds under the Missouri Constitution's general appropriation scheme, including the power to determine the purposes for which funds are expended, can be exercised only by one of the

4

other departments of government, including any "person, or collection of persons, charged with the exercise of powers properly belonging to one of those departments, . . . in the instances in this constitution expressly directed or permitted." Mo. Const. art. II, sec. 1.

The principal opinion does not examine the provisions in article IV, sections 40-44 to determine whether there is an express intent by the voters to grant the conservation commission authority over its funds that article II, section I; article IV, sections 23 and 28; and article III, section 36 would otherwise provide are within the General Assembly's power of appropriation. Instead, the principal opinion reads the language in the conservation commission provisions in isolation to hold the language of section 43(b) gives the conservation commission absolute authority to expend and use conservation funds for any of the purposes enumerated in that section regardless of the purposes specified by the General Assembly in its appropriation bills.

In so holding, the principal opinion fails to identify an express constitutional directive that the conservation commission exercise a power that would otherwise fall within the General Assembly's power of appropriation. The words "appropriate" or "appropriation" are not found in sections 43 or 44 of article IV to expressly grant the conservation commission authority over conservation funds that would otherwise fall under the General Assembly's power to determine the amount and purpose of any expenditure of conservation funds. This is in contrast to constitutional provisions complying with article II, section 1's mandate, in that the provisions limit the General Assembly's power to appropriate funds by

5

expressly stating funds stand appropriated or mandate an appropriation be made.[2] While it is not necessary to use the word "appropriation" or other "magic" language, *see Sch. Dist. of Kan. City v. State*, 317 S.W.3d 599, 605 (Mo. banc 2010) (noting constitutional construction is "broad and liberal rather than technical"), there must be sufficient language to deliberately grant the conservation commission authority to expend and disburse funds for purposes other than those specified in HB 2019.

The language in section 43(b) on which the principal opinion's analysis relies is that the conservation commission funds "shall be *expended* and *used* by the conservation commission" for the enumerated purposes, "including the purchase or other acquisition of property for said purposes," for payments in lieu of taxes, and "for no other purpose." (Emphasis added). The constitution does not define the words "expended" or "used"; therefore, the plain and ordinary meanings of those words can be derived from the

---

[2] *Compare* article IV, sections 40-44, *with* Mo. Const. art. III, sec. 37(a) (stating certain funds "*shall be and stand appropriated without legislative action*") (emphasis added)); Mo. Const. art. III, sec. 37(b) (same); Mo. Const. art. III, sec. 37(c) (same); Mo. Const. art. III, sec. 37(d) (same); Mo. Const. art. III, sec. 37(e)5 (same); Mo. Const. art. III, sec. 37(f)5; Mo. Const. art. III, sec. 37(g)5 (same); Mo. Const. art. III, sec. 37(h)5 (same); Mo. Const. art. IV, sec. 30(a)1 (providing designated funds "*shall stand appropriated without legislative action* for the following purposes" (emphasis added)); Mo. Const. art. IV, sec. 30(b)1 (same); Mo. Const. art. XIV, sec. 1.4(2) (stating monies in the Missouri Veterans' Health and Care Fund "*shall stand appropriated without further legislative action* as follows" (emphasis added)); Mo. Const. art. III sec. 47 (providing the "general assembly *shall appropriate* such amounts as may be reasonably necessary" for designated purposes (emphasis added)); Mo. Const. art. IV, sec. 47(a) (stating "monies deposited in the state parks sales tax fund pursuant to the provisions of section 47(b) of this article *shall also be appropriated* to make payments to counties" (emphasis added)); Mo. Const. art. IV, sec. 47(b) (providing particular funds "*shall be expended pursuant to an appropriation by the General Assembly*" (emphasis added)); and Mo. Const. art. IX, sec. 5 (providing certain public school funds "*shall be faithfully appropriated* for establishing and maintaining free public schools, and for no other uses or purposes whatsoever" (emphasis added)).

dictionary. *Brown v. Carnahan*, 370 S.W.3d 637, 649 (Mo. banc 2012). The dictionary definition of the word "expend" is "to pay out or distribute : SPEND." WEBSTER'S THIRD NEW INT'L DICTIONARY UNABRIDGED 799 (3d ed. 2002). In turn, the dictionary definition of "used" is "employed in accomplishing something." *Id.* at 2524. Substituting the dictionary definitions for the words "expended" and "used" in section 43(b), that section provides conservation funds "shall be paid, distributed, or spent and employed to accomplish by the conservation commission" section 43(b)'s enumerated purposes. That language does not convey the voters' intent to grant the conservation commission powers within the power of appropriation. Instead, that language conveys only the intent that conservation funds must be spent by the conservation commission for the purposes section 43(b) designates.

Language that a particular entity shall expend and use funds for a specified purpose is commonly found in constitutional and statutory provisions. It is clear from the context of those provisions such language is not meant to grant powers within the power of appropriation. For example, article III, section 47 uses the words "expended and used" to state the purposes for which state park funds can be spent, and separately refers to appropriation by the General Assembly. Mo. Const. art. III, section 47. In a similar manner, article IV, section 30(b)1 provides funds in the state road fund "*stand appropriated* without legislative action to be *used and expended* by the highways and transportation commission for the following purposes and no other," followed by a list of purposes. Mo. Const. art. IV, sec. 30(b)1 (emphasis added). Again, in article IV, section 47(a), the constitution states:

> For the purpose of providing additional monies to be *expended and used* by the department of natural resources through the state soil and water districts commission . . . for the saving of the soil and water of this state for the conservation of the productive power of Missouri agricultural land, and . . . for

7

the State park system for the acquisition, development, maintenance and operation of state parks and state historic sites . . . , and for the administration of the laws pertaining thereto, an additional sales [and use tax is hereby levied and imposed and] monies deposited in the state parks sales tax fund . . . *shall also be appropriated* to make payments to counties . . . as payment in lieu of real estate property taxes . . . , in such amounts as determined by *appropriation*.

(Emphasis added). The utilization of both "expended and used," or variations of the same, in tandem with provisions stating funds stand appropriated or directing the General Assembly shall make appropriations makes clear the words "expended and used" are not synonymous with "appropriation." Such construction would render the words "appropriate" and "appropriation" superfluous, and this Court presumes every word of a constitutional provision "has effect, meaning, and is not mere surplusage." *State v. Honeycutt*, 421 S.W.3d 410, 415 (Mo. banc 2013).

Additionally, many Missouri statutes employ language directing particular funds be "expended and used" by a particular entity for enumerated purposes. *See, e.g.*, section 8.007.4, RSMo Supp. 2018 (providing certain funds "shall be used or expended upon appropriation" by the state capitol commission "for the preservation, improvement, expansion, renovation, restoration and improved accessibility and for promoting the historical significance of the capitol"); section 41.214.5, RSMo 2016 (authorizing the office of the adjutant general to use and expend specified funds for enumerated purposes); section 42.135.5, RSMo 2016 (authorizing the Missouri veterans' commission to use and expend funds in the Veterans' Trust Fund); *see also* section 64.341.1, RSMo 2016; section 194.297.4, RSMo Supp. 2022; section 210.173.5, RSMo 2016; section 262.815.6, RSMo 2016; section 444.740.3, RSMo 2016. The words "expended and used" in statutes do not

authorize an agency or entity to expend or use funds in the treasury for statutorily enumerated purposes without an appropriation by law because the constitutional mandate that funds cannot be withdrawn from the treasury without an appropriation is superior to all statutory provisions. *See State v. Freeman*, 269 S.W.3d 422, 430 (Mo. banc 2008) (holding constitutional mandates supersede statutes). The General Assembly is presumed to know the law and would not be presumed to adopt such provisions when they could be given no effect. *See Hink v. Helfrich*, 545 S.W.3d 335, 338 (Mo. banc 2018) (stating the Court presumes statutes are constitutionally valid); *State ex rel. Nothum v. Walsh*, 380 S.W.3d 557, 567 (Mo. banc 2012) (stating the Court presumes the General Assembly knows the existing law when enacting new statutes).

Absent from the plain and ordinary meaning of the words "shall be expended and used by the conservation commission" for enumerated purposes in section 43(b) is any express authorization for the commission to exercise powers within the General Assembly's power of appropriation, such as the power to determine the purposes for which money may be expended. As noted, the constitution provides the power to make appropriations lies with the General Assembly, and an appropriation "is the authority to expend and disburse *a specific amount of money* for a *specified purpose*." *Doyle*, 625 S.W.3d at 463 (emphasis added). Section 43(b)'s positive command that conservation funds "shall be expended and used by the conservation commission" for the enumerated conservation purposes does not include a command or authorization for the commission to expend and disburse "a specific amount of money" for a "specified purpose."

9

The self-enforcing provisions in sections 43(c) and 44 do not change this analysis because they cannot supply additional authority not granted in the provisions they make self-enforcing. Constitutional provisions are self-enforcing when there is a manifest intention that they be immediately effective and no ancillary legislation is necessary. *State ex inf. McKittrick v. Wymore*, 119 S.W.2d 941, 947 (Mo. banc 1938). The fact a provision is self-enforcing merely means it requires no supplemental legislation to become effective. *See State ex rel. Miller v. O'Malley*, 117 S.W.2d 319, 323 (Mo. 1938). With no express provision in article IV, sections 40-44 granting the conservation commission authority to expend and disburse funds for purposes other than those specified in HB 2019, the self-enforcing language in sections 43(c) and 44 cannot supply that authority.

Although section 43(b) does not expressly authorize the conservation commission to withdraw money for purposes other than those specified in an appropriation bill, it expressly limits the General Assembly's appropriation authority in two respects. First, it limits the General Assembly to appropriating conservation funds for the purposes expressly stated and no others. In *Conservation Federation of Missouri v. Hanson*, 994 S.W.2d 27, 30 (Mo. banc 1999), the Court held the General Assembly violated article IV, section 43(b) when it appropriated conservation funds to pay tax refunds under the Hancock Amendment. The state defended the appropriation, arguing a refund was not a prohibited "expenditure" or "use." *Id.* The Court disagreed and held the language in article IV, section 43(b) is a positive command that conservation funds "must be used and expended by the commission for the specified, permissible conservation purposes," in section 43(b) and no others. *Id.* Therefore, "[a]ny action by the General Assembly that purports to appropriate these funds for any

10

purpose that is not an authorized use or expenditure by the commission violates" section 43(b). *Id.* The Court's analysis of section 43(b) expressly recognized the General Assembly's role in appropriating conservation funds for the purposes in section 43(b) but held its authority was limited by the express provision "shall be expended and used by the conservation commission" for conservation purposes "and for no other purpose." *Id.*

The other limitation on the General Assembly's power to appropriate regards payments in lieu of taxes. Section 43(b) expressly grants the commission authority to determine the specific amount of funds expended for that purpose, which is otherwise within the General Assembly's power of appropriation. The provisions in section 43(b) regarding payments in lieu of taxes provide that "moneys and funds of the conservation commission arising from the additional sales and use taxes provided for in 43(a)" shall be used to make payments in lieu of taxes "*in such amounts as may be determined by the conservation commission*" provided that "in no event shall the amount determined be less than the property tax being paid at the time of purchase of acquired lands." Mo. Const. art. IV, section 43(b) (emphasis added). This language is an express constitutional directive that the conservation commission determine the amount spent for payments in lieu of taxes. The authority to determine the amount of funds that may be expended and disbursed for a particular purpose is a power otherwise belonging to the General Assembly. Mo. Const. art. IV, secs. 23, 28.

The express directive in section 43(b) that the conservation commission determine the amount spent to make payments in lieu of taxes conflicts with the general provisions recognizing the General Assembly's power to determine the amounts and purposes of

11

appropriations. Section 43(b)'s express grant of authority to the conservation commission to determine the amount of funds spent to make payments in lieu of taxes and the provisions prohibiting the withdrawal of money without an appropriation should be harmonized by requiring the General Assembly to appropriate conservation funds for payments in lieu of taxes in amounts determined by the conservation commission, as communicated through the budget process. *Comm. for a Healthy Future, Inc. v. Carnahan*, 201 S.W.3d 503, 510 n.6 (Mo. banc 2006). "Courts should resolve seemingly conflicting provisions by harmonizing and rendering every word operative, if possible, so as to give effect to the whole." *Barnes v. Bailey*, 706 S.W.2d 25, 28 (Mo. banc 1986) (internal quotation omitted).

The provisions limiting the General Assembly to appropriating conservation funds for expenditure by the conservation commission for the listed purposes and granting the conservation commission power to determine amounts spent to make payments in lieu of taxes are the only provisions expressly limiting the General Assembly's powers within the power of appropriation. Without express provisions supporting the principal opinion's different analysis and conclusions as to the commission's authority, it relies on implied grants of authority. But one branch cannot exercise a power belonging to another "except in the instances in this constitution *expressly* directed or permitted." Mo. Const. art. II, sec. 1 (emphasis added). When an express direction or permission is lacking, a law attempting to vest one branch of government with the powers of another violates article II, section 1. *See Mo. Coal. for Env't*, 948 S.W.2d at 133. Article IV, sections 40-44 cannot be interpreted to permit the conservation commission to exercise a power within the General Assembly's

12

power of appropriation without an *express* provision to that effect. Inferences or implications based on the historical background or voters' purpose are not legally sufficient.

Because there is no language in sections 40-44 of article IV authorizing the conservation commission to spend money for purposes other than those specified in an appropriation bill, the proper application of the governing constitutional provisions compels the conclusion that the only express provision permitting the commission to exercise authority belonging to the General Assembly is found in article IV, section 43(b), which grants the conservation commission the authority to determine the amounts to be spent to make payments in lieu of taxes. Article IV, section 43(b) entitles the commission to a declaration that section 43(b) grants the conservation commission authority to determine, within specified parameters, the amount of funds generated by the conservation sales and use taxes to be expended and used for payments in lieu of taxes. For these reasons, I dissent from the analysis and conclusions of the principal opinion. Instead, I would hold the circuit court's judgment should be reversed, and this Court should act pursuant to Rule 84.14 and enter judgment declaring only that article IV, section 43(b) grants the conservation commission authority to determine the amount of conservation sales and use tax funds to be expended and used for payments in lieu of taxes, subject to the minimum amount established in article IV, section 43(b).

_____
PATRICIA BRECKENRIDGE, JUDGE

13